Carl A. WALKER, Margaret A. Walker, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

WALLACE AUTO SALES, INCORPORATED, Guardian National Acceptance Corporation, and John Does, One–Ten, Defendants–Appellees.

No. 97–3824.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1998.

Decided Sept. 18, 1998.

Daniel A. Edelman (argued), Edelman & Combs, Chicago, IL, for Carl A. Walker and Margaret M. Walker.

Michael Kreloff (argued), Northfield, IL, for Wallace Auto Sales, Inc.

Arthur L. Klein (argued), Eugene J. Kelley, Jr., John L. Ropiequet, Christopher S. Navaja, Arnstein & Lehr, Chicago, IL, Brian G. Shannon, R. Christopher Cataldo, Jaffe, Snider, Raitt & Heuer, Detroit, MI, for Guardian National Acceptance Corp.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Carl and Margaret Walker ("the Walkers") brought this lawsuit against Wallace Auto Sales ("Wallace") and Guardian National Acceptance Corporation ("Guardian") on behalf of themselves and all others similarly situated. In their nine-count amended complaint, the Walkers alleged that the defendants systematically imposed hidden finance charges on automobile purchases in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1693r, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961–1968, the Illinois Consumer Fraud Act, 815 ILCS 505/2, and the Illinois Sales Finance Agency Act, 205 ILCS 660/8.5. The district court dismissed the Walkers' TILA claim because the conduct alleged by the Walkers did not constitute a violation of that Act. In addition, the court dismissed the Walkers' remaining claims because, in its view, those claims could not survive in the absence of the TILA violation. For the reasons set forth in the following opinion, we reverse the district court's dismissal of the Walkers' TILA claim against Wallace, affirm its dismissal of the TILA claim against Guardian and remand the Walkers' remaining claims to the district court for further consideration.

# I

## BACKGROUND

### A. Facts[1]

On August 31, 1995, the Walkers agreed to purchase a used 1989 Lincoln Continental from Wallace. In order to finance this purchase, the Walkers entered into a retail installment contract ("the contract") with Wallace. The contract listed the cash price of the automobile as $14,040.[2] In addition to that amount, the Walkers agreed to pay $699 for an extended warranty and $61 for license, title and taxes. The Walkers made a down payment of $1,500, leaving $13,300 as the amount to be financed on the sales contract. The Walkers agreed to finance this balance at an annual percentage rate of 25% over a period of four years (48 monthly installments of $441 each). Under these terms, the Walkers were to pay $7,868 in interest over the course of those four years, giving the sales contract a total value of $21,168. All of this information was clearly delineated on the face of the contract.

After the sale was complete, Wallace promptly assigned the contract to Guardian, "a specialized indirect consumer finance company engaged primarily in financing the purchase of automobiles through the acquisition of retail installment contracts from automobile dealers." R.21 ¶ 7. Guardian purchased the contract at a discount of $7,182 from the total value.

### B. Proceedings in the District Court

As noted above, the Walkers filed a nine-count amended complaint against Wallace and Guardian in the district court alleging violations of TILA, RICO and two state law consumer protection statutes. The gravamen of the Walkers' complaint is that Wallace artificially inflated the cost of the vehicle to cover the discount at which Guardian purchased the Walkers' sales contract and therefore imposed a "hidden finance charge" on them in violation of TILA, 15 U.S.C. § 1638(a)(3).[3] This same allegation serves as the basis for the Walkers' RICO and state law-based claims.

Wallace and Guardian filed a motion to dismiss the Walkers' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court first examined the Walkers' TILA claim. The court began its analysis of that claim by noting that the regulations interpreting TILA's disclosure requirements exempt specific charges from those requirements. Specifically, the Official Staff Commentary to the regulations provides that:

> Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash

---

1. Because this case comes to us on appeal from the dismissal of the complaint, we take the facts as alleged in the complaint as true for purposes of our review. *See, e.g., Kauthar SDN BHD v. Sternberg,* 149 F.3d at 672–73 n. 1 (7th Cir. 1998).

2. According to the August 1995 "Blue Book" used car guide, the car purchased by the Walkers had a retail value of $8,300.

3. That section provides in pertinent part:
 (a) Required disclosures by creditor

> For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
> . . . .
> (3) The "finance charge", not itemized, using that term.
15 U.S.C. § 1638(a)(3). Under TILA, finance charge is defined as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a).

price of the property or services sold. However, if the creditor separately imposes a charge on the consumer to cover certain costs, the charge is a finance charge if it otherwise meets the definition. 12 C.F.R. Pt. 226, Supp. I at 308–09. The commentary further states that "[a] discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed on the consumer." *Id.* In the district court's view, the "hidden finance charge" alleged by the Walkers was in fact a "cost of doing business" and was therefore exempt from TILA's disclosure requirements. The court therefore held that the Walkers had not pleaded sufficient facts to state a claim under TILA. In addition, the court dismissed the Walkers' RICO and state law-based claims because, in its view, those claims could not survive in the absence of a TILA violation.

## II

## DISCUSSION

 We review de novo the district court's decision to dismiss, taking the Walkers' factual allegations as true and drawing all reasonable inferences in their favor. *See Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 669–70 (7th Cir. 1998). In evaluating the Walkers' complaint, we read their complaint as a whole, *see Black v. Lane,* 22 F.3d 1395, 1400 (7th Cir.1994), and shall affirm the district court's order of dismissal only if " 'it appears beyond doubt that [the Walkers] can prove no set of facts in support of [their] claim which would entitle [them] to relief,' " *Strasburger v. Board of Educ.,* 143 F.3d 351, 359 (7th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).[4]

### A. The Walkers' TILA Claim

In order to assess the sufficiency of the Walkers' TILA claim against Wallace and Guardian, we must first examine the statutory and regulatory framework under which it arises.

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 285 (7th Cir.1997) (stating that TILA's purpose is "to protect consumers from being misled about the cost of credit"); *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 612 (7th Cir.1982) (stating that Congress enacted TILA to "provide information to facilitate comparative credit shopping and thereby the informed use of credit by consumers"). In order to effectuate this purpose, TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction. *See* 15 U.S.C. § 1638(a)(3). These stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold. *See Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 364, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *see also Gibson,* 112 F.3d at 287 (stating that, under TILA, if merchant charges credit customers a higher "cash" price for an item than cash customers, then that extra charge is a finance charge and must be disclosed as such).

---

**4.** We note at the outset that the operative complaint in this case is the Walkers' (first) amended complaint. In their opening brief to this court, the Walkers base their statement of facts on their second amended complaint. That complaint, however, is not before this court. On September 18, 1997, the district court entered its judgment dismissing plaintiffs' amended complaint. The Walkers subsequently filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend judgment to permit filing of a second amended complaint. The Walkers attached their proposed second amended com-

plaint to the Rule 59(e) motion. On October 27, 1997, the court entered an order denying the Walkers' motion. In their opening brief to this court, the Walkers challenged only the district court's order dismissing their amended complaint. Accordingly, they have waived any argument concerning the district court's exercise of discretion in denying their Rule 59(e) motion. *See Marie O. v. Edgar,* 131 F.3d 610, 614 n. 7 (7th Cir.1997) (holding that appellant waives arguments not raised in opening brief and that court will not consider arguments raised for the first time in the reply brief).

TILA defines a "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). In addition, the regulations implementing TILA (known collectively as "Regulation Z") provide that:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a). Regulation Z further provides that the term "finance charge" includes "[c]harges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation." *Id.* § 226.4(b)(6).

■ These provisions, however, are qualified by the Federal Reserve Board's Official Staff Commentary to Regulation Z [5] which exempts specific charges from TILA's disclosure requirements:

> *Costs of doing business.* Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash price of the property or services sold. However, if the creditor separately imposes a charge on the consumer to cover certain costs, the charge is a finance charge if it otherwise meets the definition. For example:
>
> A discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed on the consumer.

12 C.F.R. Pt. 226, Supp. I at 308–09.

In this case, the Walkers allege that the defendants violated TILA by artificially inflating the "cash price" of the vehicle purchased by the Walkers to cover the cost of the discount at which Guardian purchased the Walkers' sales contract. The Walkers contend that, by passing on the cost of Guardian's discount to the Walkers, the defendants imposed a "hidden finance charge" on them in violation of TILA, 15 U.S.C. § 1638(a)(3). The defendants, however, contend that the Walkers' TILA claim must be dismissed because the "hidden finance charge" alleged by the Walkers was in fact a "cost of doing business" and was therefore exempt from TILA's disclosure requirements. *See* 12 C.F.R. Pt. 226, Supp. I at 308–09.

As an initial matter, we note that, under TILA, Guardian may only be charged as an assignee, not a creditor. *See* 15 U.S.C. § 1602(f); 12 C.F.R. Pt. 226, Supp. I at 300. Accordingly, the Walkers must properly allege a cause of action against Wallace (the creditor) before it can assert a claim against Guardian (the assignee). We therefore turn first to the issue of whether the Walkers' amended complaint states a valid TILA claim against Wallace.

**1. Wallace's Liability**

In paragraph 27 of the Walkers' amended complaint, they allege that:

> It is the standard policy of Wallace and other dealers who receive financing from Guardian to charge hidden finance charges on vehicles sold on time. The purported cash price of vehicles sold in this manner substantially exceeds the value of the vehicle, and the price at which comparable vehicles are sold for cash, and includes part of the finance charge.

R.21 ¶ 27. In the next paragraph, the Walkers further allege that this "hidden finance charge resulted from the need of [Wallace] to pass on to the consumer the discount imposed by Guardian." *Id.* ¶ 28. It is our task to discern whether these allegations are sufficient to state a claim against Wallace under TILA.

---

5. The official staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding on this court unless they are " 'demonstrably irrational.' " *McGee v. Kerr–Hick-man Chrysler Plymouth, Inc.,* 93 F.3d 380, 383–84 (7th Cir.1996) (quoting *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)).

■ As we noted above, TILA requires creditors to disclose clearly and accurately any finance charge that the consumer will bear in a particular credit transaction. As the definitions set forth above indicate, this means that a creditor-merchant must disclose to a consumer buying on credit exactly how much he will pay for that credit. *See* 12 C.F.R. § 226.4(a) (defining finance charge as "the cost of consumer credit as a dollar amount"). In this case, the Walkers allege that Wallace is charging higher prices to customers who are buying cars on credit than to customer who are paying cash. In other words, credit customers, such as the Walkers, are paying higher "cash" prices only because they are buying on credit. The higher cash price paid by these customers is therefore part of the cost of buying on credit. Under TILA, such a cost is a finance charge and must be disclosed to the consumer as such. Accordingly, we conclude that the Walkers have alleged sufficient facts to state a cause of action against Wallace under TILA.

Our conclusion that the Walkers allege sufficient facts to state a cause of action under TILA is supported · by the Supreme Court's exposition of the concept and effect of a "hidden finance charge" in *Mourning*. In that case, the Court noted that "[o]ne means of circumventing the objectives of the Truth in Lending Act, as passed by Congress, was that of 'burying' the cost of credit in the price of goods sold." *Id.* at 366, 93 S.Ct. 1652. The Court explained further that, in many credit transactions, creditors sought to evade TILA's mandate by claiming that no finance charge had been charged and assuming "the cost of extending of credit as an expense of doing business, to be recouped as part of the price charged in the transaction." *Id.* To illustrate this concept, the Court provided the following example:

> [T]wo merchants might buy watches at wholesale for $20 which normally sell at retail for $40. Both might sell immediately to a consumer who agreed to pay $1 per week for 52 weeks. In one case, the merchant might claim that the price of the watch was $40 and that the remaining $12 constituted a charge for extending credit to the consumer. From the consumer's point of view, the credit charge represents the cost which he must pay for the privilege of deferring payment of the debt he has incurred. From the creditor's point of view, much simplified, the charge may represent the return which he might have earned had he been able to invest the proceeds from the sale of the watch from the date of the sale until the date of payment. The second merchant might claim that the price of the watch was $52 and that credit was free. The second merchant, like the first, has forgone the profits which he might have achieved by investing the sale proceeds from the day of the sale on. The second merchant may be said to have 'buried' this cost in the price of the item sold. By whatever name, the $12 differential between the total payments and the price at which the merchandise could have been acquired is the cost of deferring payment.

*Id.* at 366 n. 26, 93 S.Ct. 1652. The facts in this case are substantially similar to those in the Court's hypothetical. Indeed, the Walkers allege that Wallace, like the second merchant, buried part of the cost of credit in the "cash" price.[6] As the Court noted, this extra charge above the amount paid by a cash customer is "the cost of deferring payment." *Id.* Under TILA, that cost must be disclosed as a finance charge.

Moreover, our conclusion is further strengthened by this court's recent decision in *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 (7th Cir.1997). In that case, we consolidated three appeals from district court decisions dismissing claims that car dealers violated TILA by charging higher prices for warranties in credit transactions than in cash transactions. Specifically, the plaintiffs alleged that the difference between the price of the warranty in credit transactions and the

---

6. Wallace contends that this case is distinguishable from the hypothetical in *Mourning* because, in this case, Wallace did disclose a finance charge to the Walkers whereas, in the *Mourning* hypothetical, the second merchant advertised the watch as credit free. TILA, of course, is aimed at ensuring the full and complete disclosure of credit terms. Therefore, the fact that Wallace disclosed a portion of the finance charge to its customers does not excuse it from failing to disclose the remainder.

price of the warranty in cash transactions constituted a finance charge that must be disclosed under TILA. In assessing the plaintiffs' allegations, we concluded that the dealers' alleged concealment of credit costs in the warranty price circumvented the objectives of TILA by preventing consumers from accurately gauging the cost of credit.[7] Indeed, in reversing the district courts' dismissals of plaintiffs' lawsuits, we stressed that the dealers' alleged conduct constituted the "type of fraud that goes to the heart of the concerns that actuate the Truth in Lending Act." *Id.* The same can be said of Wallace's alleged practices in this case. Instead of hiding the additional finance charges in the price of warranties, Wallace allegedly hid a portion of the finance charge in the "cash" price of the cars sold to credit customers. This fraud is no different from that alleged in *Gibson*—in both cases, the dealers allegedly misled the consumers about the true cost of buying on credit.

Wallace, however, contends that, even if we characterize the cost allegedly imposed on the Walkers and other credit customers as a finance charge, the particular type of charge involved here, "a discount imposed on a credit obligation when it is assigned by a seller-creditor to another party," *see* 12 C.F.R. Pt. 226, Supp. I at 308–09, is exempt from TILA's disclosure requirements. As we noted earlier, the Official Staff Commentary to Regulation Z exempts certain charges from TILA's disclosure requirements:

> *Costs of doing business.* Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash price of the property or services sold. However, if

the creditor separately imposes a charge on the consumer to cover certain costs, the charge is a finance charge if it otherwise meets the definition. For example:

> A discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed on the consumer.

*Id.* This regulation makes clear that merchantcreditors are not necessarily required to disclose to consumers that they plan on selling the retail installment contract at a discount. However, if a creditor-merchant "separately imposes" the cost of the discount on the particular credit consumer, then that cost does not fit within the "cost of doing business" exemption, but rather is a finance charge and must be disclosed to the consumer as such. Therefore, the critical issue in this case is the meaning of the term "separately imposed" and whether Wallace's alleged conduct constitutes such a separate imposition.

In this case, the district court concluded that the Walkers failed to allege that Wallace "separately imposed" the cost of the discount on them. In the district court's view, even if Wallace artificially inflated the "cash price" of the automobile sold to the Walkers to cover the cost of the discount imposed by Guardian, the discount was not "separately imposed" on the Walkers because those charges were included in the cash price of the car. We cannot accept the district court's interpretation of the term "separately imposed." Indeed, under the district court's interpretation, a creditor would be allowed to impose a cost on consumers buying on credit without disclosing to those customers that they are paying more only because they are buying on credit.[8] Ac-

---

7. To illustrate this point, Chief Judge Posner offered the following example:

> If the amount retained of the fee for an extended warranty or other third-party service is greater in credit transactions than in cash transactions, then in deciding whether to pay cash or buy on credit the consumer will assume that if he pays cash he will have to pay the same additional fee to get the extended warranty; if the facts are as the plaintiffs claim, he would not. The purchaser thinks he'll have to pay $800 for an extended warranty whether he pays cash or buys on credit, whereas if the retention really is smaller on

cash purchases than on credit purchases and the third party's fee net of the retention is the same, the customer will not have to pay $800 if he pays cash for the car.

> *Gibson,* 112 F.3d at 287.

8. In fact, adoption of the district court's view in this case would severely undermine our holding in *Gibson* by allowing unscrupulous used car dealers to evade our holding in that case by hiding a portion of the finance charge in the cash price of the vehicle rather than concealing it as part of the price of the extended warranty. Given that TILA and Regulation Z were drafted in

ceptance of this view would therefore eviscerate TILA's stated purpose to "assure a meaningful disclosure of the credit terms so that the consumer will be able to compare more readily various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. By contrast, we believe that the term "separately imposed" must be interpreted in a manner consistent with TILA's purpose of ensuring that consumers are informed fully of the costs of buying on credit. Accordingly, we hold that a charge should be considered "separately imposed" on a credit consumer when it is imposed in credit transactions but not in cash transactions.[9]

In their amended complaint, the Walkers allege that Wallace passed on the cost of the discount imposed by Guardian, that this cost was passed on in credit transactions only and that Wallace failed to disclose it as a finance charge. At this early stage in the proceedings, these allegations are sufficient to prevent the dismissal of the Walkers' TILA claim against Wallace. In order to prevail in the end, however, the Walkers will have to prove their allegation that Wallace separately imposed the cost of Guardian's discount on them. As we noted above, the commentary to Regulation Z makes it clear that it is permissible for a car dealer to assign retail installment contracts to a finance company at a discount, without disclosing the discount to customers. See 12 C.F.R. Pt. 226, Supp. I at 30809. Moreover, the commentary specifically provides that a "charge directly or indirectly imposed by a creditor" is not considered to be a finance charge if the charge "is imposed uniformly in both cash and credit transactions." 12 C.F.R. § 226.4(a) & Pt.

226, Supp. I at 308. Accordingly, Wallace need not disclose the cost of the discount as a finance charge if it attempts to recoup that cost by charging *all* customers higher prices. Under that scenario, the discounts would not be "separately imposed" on credit consumers like the Walkers, but, like any other overhead item, would be taken into account in the price of all vehicles sold.

Finally, in arriving at the holding we reach today, we stress that nothing in the law prevents a merchant-creditor from passing on the full cost of a discount imposed by an assignee to a credit purchaser. However, if the merchant-creditor chooses this route, TILA requires that it disclose that amount to the purchaser as a finance charge.

### 2. Guardian's Liability

Because we have concluded that the Walkers have stated a claim against Wallace under TILA, we must consider whether they have stated a claim against Guardian.[10] As we noted earlier, under TILA, Guardian may only be charged as an assignee, not a creditor. Section 131 of TILA, 15 U.S.C. § 1641, limits the liability of subsequent assignees to those situations in which the violation of TILA is "apparent on the face of the disclosure statement." That section provides in pertinent part:

Liability of assignees

(a) Prerequisites

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be

---

order to protect consumers from such untoward practices, we do not think that Congress or the Federal Reserve Board (the agency charged with drafting Regulation Z) could have intended such an anomalous result.

9. The district court's view appears to be that an item cannot be separately imposed on a consumer unless it appears separately on the face of the contract. Therefore, because the Walkers failed to allege that the defendants imposed the cost of the discount separately from the Walkers' obligations to pay the purchase price of the vehicle, the district court held that the Walkers failed to allege nondisclosure of a finance charge. However, as noted above, this interpretation of the phrase "separately imposed" turns TILA on its

head, rewarding a creditor for burying the cost of credit in the cash price and penalizing it for disclosing the cost as a separate line item. In our view, because a finance charge may be imposed directly or indirectly, see 15 U.S.C. § 1605 & 12 C.F.R. § 222.6(4), a charge may be separately imposed upon a consumer despite the fact it does not appear separately on the face of the contract. Accordingly, in this case, the fact that Wallace did not separately list the cost of discount on the face of the retail installment contract is not fatal to the Walkers' claim.

10. The district court, of course, did not reach this issue because it found that the Walkers had failed to state a TILA claim against the original creditor, Wallace.

maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

*Id.*

The Walkers advance two arguments as to why their amended complaint sufficiently states a TILA claim for assignee liability against Guardian. First, the Walkers contend that the limitations on assignee liability in § 131(a) are inapplicable in this case because Guardian is bound by the terms of the retail installment contract it purchased from Wallace. That contract repeats the language of the FTC's Holder Notice (as 16 C.F.R. § 433.2 requires) which provides:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTORSHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*Id.* In the Walkers' view, this provision subjects the holder (Guardian) to "all claims" which the consumer (the Walkers) has against the seller (Wallace), including violations of TILA. In the alternative, the Walkers assert that Guardian is liable under § 131 because Wallace's violation of TILA is apparent on the face of the sales contract. Specifically, in their amended complaint, the Walkers allege that "Guardian is conscious of the fact that the dealer has a strong incentive to pass the discount onto the customer." R.21 ¶ 9. The Walkers contend that this allegation, combined with their allegation that the purported "cash price" of the vehicle was substantially in excess of its true value, is sufficient to state a TILA claim for assignee

liability against Guardian. In short, they maintain that, given Guardian's knowledge of Wallace's incentive to pass the cost of the discount on to its credit customers, Guardian could discern from the exorbitant "cash price" appearing on the face of the sales contract that Wallace had concealed a portion of the finance charge in the cash price.

█ We turn first to the Walkers' contention that they may maintain a TILA action against Guardian due to the inclusion of the FTC's Holder Notice in their contract with Wallace. In essence, the Walkers assert that, when Guardian accepted the assignment, it voluntarily waived any right to rely on the statutory defense provided by § 131(a). This court recently addressed this very issue in *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 693 (7th Cir.1998). In that case, the court held that the inclusion of the FTC's Holder Notice in a retail installment contract did not trump the clear command of § 131 that subsequent assignees can be held liable under TILA only when the violation is apparent on the face of the disclosure statement. *See id.* (citing *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir.1994) ("Regulations cannot trump the plain language of statutes . . . .")).

█ Given our conclusion that the inclusion of the FTC's Holder Notice in the Walkers' sale contract does not override the limitations on assignee liability in § 131, we turn to the Walkers' contention that Guardian may nonetheless be held liable under § 131 because, given Guardian's "knowledge" of Wallace's practices, Wallace's failure to disclose a portion of the finance charge was apparent on the face of the Walkers' retail installment contract. Again, this contention is answered by *Taylor*. In that case, the plaintiffs argued "that the apparentness (or lack thereof) of a violation should be ascertained in light of the knowledge that a reasonable assignee similarly situated to the defendants should have." *Id.* at 694. In the *Taylor* plaintiffs' view, the assignees, "as active participants in the financing market," know that creditors often hide finance charges in other items (in that case, the price of an extended warranty, in this case, the "cash price" of the automobile) and therefore

must have known that the contracts issued to the plaintiffs contained hidden finance charges. The court rejected the plaintiffs' argument and held that, under the plain wording of the statute, an assignee can be held liable only if the violation is apparent on the face of the documents assigned. *See id.*

In addition to the argument based on Guardian's knowledge of industry practices, the Walkers assert that the TILA violation was apparent on the face of the disclosure statement due to the fact that the "cash price" of the vehicle purchased by the Walkers was substantially in excess of the vehicle's actual value. This argument is also without merit. One cannot assume that Guardian could tell from the face of the sales contract that the auto was overpriced; more importantly, even if Guardian did know that the vehicle was overpriced, such knowledge cannot be equated with knowledge that Wallace was burying a portion of the finance charge in the price of the vehicle.[11]

Finally, even if the Walkers' amended complaint could be construed to allege that Guardian had actual knowledge of Wallace's practice of disguising finance charges, such allegations are not sufficient, under the plain wording of the statute, to state a TILA claim for assignee liability against Guardian. Instead, the Walkers must allege that the violation was "apparent on the face" of the assigned documents. The Walkers do not, and cannot, make such an allegation. Accordingly, we hold that the Walkers have failed to state a TILA claim against Guardian.[12]

**B. The Walkers' RICO and State Law Based Claims**

In addition to their TILA claim against Wallace and Guardian, the Walkers' amended complaint contains eight other counts alleging that Wallace, Guardian and certain unnamed officers of those companies ("John Does 1–10") violated RICO and two Illinois consumer protection statutes. As we noted earlier, these remaining counts are based on the same factual predicate as the Walkers' TILA claim. Once the district court determined that the Walkers had failed to state a claim under TILA, it dismissed the remaining claims because, in its view, those claims could not survive in the absence of a TILA violation. The court did not independently assess the sufficiency of the Walkers' allegations in the remaining counts.

Because the district court did not reach the issue of whether the plaintiffs' remaining claims are viable and the parties have not briefed that issue on appeal, we remand that issue to the district court for its consideration in the first instance.[13] In returning these counts to the district court, we also leave for that court's consideration in the first instance the issue of whether, despite the fact that Guardian cannot be held liable as an assignee under TILA, the Walkers may still be able to allege that Guardian had a level of knowledge compatible with liability under RICO (Count II), the Illinois Consumer Fraud Act (Counts VII & VIII) and the Illinois Sales Finance Agency Act (Count IX).

---

11. TILA, of course, does not prohibit car dealers from selling their cars at high prices. Instead, the Act is aimed only at ensuring that consumers are made fully cognizant of the costs of buying on credit. *See, e.g., Frazee v. Seaview Toyota Pontiac, Inc.,* 695 F.Supp. 1406, 1408 (D.Conn. 1988) ("While Congress was concerned with the problem of hidden finance charges in enacting TILA, it did not contemplate providing a right of action whenever a consumer is dissatisfied with a purchase.").

12. The Walkers make no argument that § 131(b) of TILA, 15 U.S.C. § 1641(b), provides them with any rights independent of those provided in § 131(a).

13. Although the Walkers did not specifically address the district court's dismissal of its RICO and state law based claims, we decline to find waiver because they did address the district court's sole reason for dismissing those claims— the Walkers' failure to state a TILA claim. The situation we encounter in this case is therefore different from the one we encountered in *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659 (7th Cir.1998). In *Kauthar,* we held that the appellant waived its objection to the district court's dismissal of several of its claims by failing to address on appeal all of the grounds on which the district court dismissed those claims. *See id.* at 667–68. Here, by contrast, the Walkers did address the sole ground on which the district court dismissed their entire complaint.

## Conclusion

We reverse the district court's judgment dismissing the Walkers' TILA claim (Count I) against Wallace, but affirm the dismissal of the TILA claim against Guardian. We also remand the remaining counts (Counts II through IX) to the district court for further consideration consistent with this opinion.

AFFIRMED IN PART;

REVERSED AND REMANDED IN PART.