In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1944

Gregory Balderos, on behalf of himself
and all others similarly situated,

Plaintiff-Appellant,

v.

City Chevrolet, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 C 2084--George M. Marovich, Judge.

Argued November 8, 1999--Decided May 26, 2000

   Before Posner, Chief Judge, and Ripple and
Diane P. Wood, Circuit Judges.

   Posner, Chief Judge.  The complaint in
this class action suit against an
automobile dealer and a finance company
(and some associated individuals)
charges, in 136 paragraphs, violations of
the Truth in Lending Act, RICO, and state
consumer-protection laws. 15 U.S.C.
sec.sec. 1601 et seq.; 18 U.S.C. sec.sec.
1961 et seq.; 815 ILCS 505/2; 205 ILCS
660/8.5. Because the district judge
dismissed the suit for failure to state a
claim, we take the facts alleged in the
complaint to be true, though of course
without vouching for their truth.

   Three practices are challenged. First,
when the dealer arranges financing with
the finance company, and the amount of
the loan exceeds the retail value of the
automobile by more than 20 percent, the
finance company levies an additional
charge on the dealer, who raises the
price of the car to cover the additional
charge. The addition is not listed as a
finance charge on the Truth in Lending
disclosure form that the dealer is
required to give the purchaser and so

does not increase the interest rate disclosed on the form. Yet it is a finance charge--labels don't control--and so it must be disclosed. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 931-34 (7th Cir. 1998); Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 284-85 (7th Cir. 1997); see also Williams v. Chartwell Financial Services, Ltd., 204 F.3d 748, 753-54 (7th Cir. 2000); Adams v. Plaza Finance Co., 168 F.3d 932, 934 (7th Cir. 1999); Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 942 (7th Cir. 1995). Against this conclusion the defendants' only argument is that the complaint, despite its verbosity, does not actually allege that the dealer increases the price only of the cars that are financed, as opposed to those that are sold for cash. We think it does, because it alleges that the sale price of the financed cars substantially exceeds the price at which comparable vehicles are sold for cash, as in Walker v. Wallace Auto Sales, Inc., supra, 155 F.3d at 931-32. Yet at argument the plaintiff's lawyer, not content with pointing this out, also argued that he does not have to prove that the dealer added the finance charge to the price of only the financed cars, not of cars sold for cash as well. We disagree. Suppose the additional finance charge were on average $50 and were imposed in 80 percent of the dealer's sales. And suppose that instead of adding $50 to the price of the financed cars the dealer added $40 to the price of all cars. There would be no violation of the Truth in Lending Act, because the credit purchaser would not be paying any more than the cash purchaser. See id. at 931-32, 934; Gibson v. Bob Watson Chevrolet-Geo, Inc., supra, 112 F.3d at 287.

A finance charge is a charge that is avoidable by paying cash, 12 C.F.R. sec. 226.4(a), and in our example the charge is not so avoidable and therefore is not a finance charge, even though it originates in a practice of selling on credit. The Act's purpose is to enable borrowers to determine the cost of credit so that they can decide, in the case of a purchase (as distinct from a free-standing loan), whether to pay cash or to borrow from or through the seller or from another lender (and thus pay cash to the seller), who may charge a lower interest rate. 15 U.S.C. sec. 1601(a); Mourning v.

Family Publications Service, Inc., 411 U.S. 356, 364-68 (1973); Smith v. Cash Store Management, Inc., 195 F.3d 325, 332 (7th Cir. 1999); Walker v. Wallace Auto Sales, Inc., supra, 155 F.3d at 930, 932–34. That purpose is not engaged when the same charge is imposed on cash purchasers and on credit purchasers. With the charge the same, the purchaser's choice between paying cash to the seller (and perhaps borrowing from someone else) and buying from the seller on credit is not influenced.

If the plaintiff in this case, standing by his guns, declared that he would not try to prove that the dealer does not fold the additional finance charge into his cash price, then we would affirm the dismissal of this part of the complaint. But at argument the plaintiff's lawyer made clear that he does intend to prove this if we reject his broader theory (as we have just done), and the narrower theory is alleged and is in any event consistent with the complaint, which is all that matters. E.g., Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439–40 (7th Cir. 1994).

Second, the finance company charges the dealer a $50 "acceptance fee" for every retail sales contract that it agrees to finance, but waives the fee if the dealer sells membership in the "Continental Car Club," which the finance company owns, to the purchaser of the car. Membership, which entitles the member to a bond card so that he doesn't have to surrender his driver's license should he be ticketed for a traffic offense, is sold only to credit customers of the dealer. The plaintiff was charged $60 for membership in the Continental Car Club and the charge was not included in the finance charge.

The plaintiff is prepared to prove that the value of the bond card is considerably less than $60, and indeed is probably little more than $10, in which event the membership fee is rather transparently in lieu of a $50 finance charge. The dealer changes a $50 finance charge, which if listed as such would cause the disclosed interest rate to rise, into a $60 fee for a nonfinance service, namely the bond card. Although the service is worth only about $10, the buyer doesn't care that he's paying $60

for it, because he is also getting a discount of $50 and thus paying a net of only $10. It seems, therefore, that $50 of the $60 membership fee is a disguised finance charge, and the disguise violates the Act. See 12 C.F.R. sec.sec. 226.4(a), (b)(6); Walker v. Wallace Auto Sales, Inc., supra, 155 F.3d at 931-34; Gibson v. Bob Watson Chevrolet-Geo, Inc., supra, 112 F.3d at 284-85; see also Adams v. Plaza Finance Co., supra, 168 F.3d at 935-37.

Against this the defendants again point to the language of the complaint. The complaint does not allege that the buyer is forced to buy a Continental Car Club membership (and it is conceded that he is not), or that the $50 finance charge is imposed if the buyer refuses to buy the membership, or even that the finance charge is ever imposed--maybe the dealer swallows it; not all costs are passed on by a middleman to his customers. If the finance charge is either never imposed, or not imposed on those car buyers who do not buy the membership, then the membership fee cannot be a charge in lieu of a finance charge, because it is not avoidable by paying cash. But again the plaintiff has offered to prove that the finance charge is imposed on buyers who do not buy the membership and not on those who do, and this possibility is not excluded by any of the allegations of the complaint, unlike the situation in Damato v. Hermanson, 153 F.3d 464, 473 (7th Cir. 1998).

The fact that membership in the club is not mandatory is not a defense. Consider this variant of our earlier example: The membership is worth $11, and as before the fee is $60. Then the car buyer who buys the membership, and so (we are assuming) avoids the $50 finance charge, is $1 to the good; for when the dust has cleared he has paid an extra $10 (the $60 membership fee, which he has paid, minus the $50 finance charge, which he has saved) for a benefit worth $11. In effect, he has paid a finance charge of $49--but the lower charge has not been disclosed, either. Cf. McGee v. Kerr-Hickman Chrysler Plymouth, Inc., 93 F.3d 380, 384 (7th Cir. 1996).

Although both alleged violations of the Truth in Lending Act were committed by the dealer in the first instance, since

it is the dealer who through the ruses alleged is concealing the true interest rate from the buyer, the finance company, as assignee of the retail sales contract which it is financing, is liable for any violation that is apparent on the face of the contract. 15 U.S.C. sec. 1641(a). The cases are very strict in their interpretation of this provision. So while it is true that by looking at the contract the finance company here could tell that the $60 membership fee, which it knew to be far in excess of the value of the membership (for remember that the Continental Car Club is owned by the finance company, and so the company knows what membership in the club is worth), was an undisclosed finance charge, something that is "apparent" only by virtue of special knowledge, whether about the practices of other firms, as in Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998), and Green v. Levis Motors, Inc., 179 F.3d 286, 295 (5th Cir. 1999), or its own practices, as in Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709-10 (11th Cir. 1998), is not apparent on the face of the contract itself. Even more clearly, the finance company could not tell by looking at the retail sales contract that its 20 percent additional finance charge had been passed on to the buyer. The plaintiff's reliance on 16 C.F.R. sec. 433.2 and the saving provision in 15 U.S.C. sec. 1610(d) is unavailing for the reasons explained in Green v. Levis Motors, Inc., supra, 179 F.3d at 296.

The third violation alleged, not of the Truth in Lending Act but under the federal mail and wire fraud statutes, is a breach of fiduciary duty by the dealer. Those statutes are criminal and do not create civil liability directly, but they are among the statutes the violation of which is a "predicate act" upon which a civil RICO claim can be based. 18 U.S.C. sec. 1961(1)(B); Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). The allegation here is that while the finance company has agreed to finance the dealer's retail sales contracts at a particular interest rate, when the dealer is able to negotiate a higher interest rate with the buyer of the car the dealer and the finance company split the additional interest. The plaintiff describes the dealer's cut as a "kickback" from the finance company

and argues that undisclosed self-dealing by an agent is a serious violation of fiduciary duty--which it is. Doner v. Phoenix Joint Stock Land Bank, 45 N.E.2d 20, 24 (Ill. 1942); Meinhard v. Salmon, 164 N.E. 545 (N.Y. 1928) (Cardozo, C.J.); Gagnon v. Coombs, 654 N.E.2d 54, 62 (Mass. App. 1995); Restatement of Agency (Second) sec.sec. 387, 388 (1958). But an automobile dealer is not its customers' agent, obviously not in selling cars but only a little less obviously in arranging financing. If the buyer pays cash and arranges his own financing, the dealer is not in the picture at all. If the buyer wants to buy on credit, he recognizes that his decision does not change the arms' length nature of his relation to the dealer. He knows, or at least has no reason to doubt, that the dealer seeks a profit on the financing as well as on the underlying sale. Restatement, supra, sec. 1, illustration 2.

This is in general, not in every case; it is a question of fact whether the contract express or implied between a particular dealer and a particular customer constitutes the former an agent for the latter in procuring financing. Cf. American Ins. Corp. v. Sederes, 807 F.2d 1402, 1405-06 (7th Cir. 1986); Restatement, supra, sec. 1(1). But there is no suggestion that the dealer here represented that he would act as the buyer's agent in dealing with the finance company, no indication therefore that an agency relationship was created. If there were such a relationship it would mean that the buyer could tell the dealer to shop the retail sales contract among finance companies and to disclose the various offers the dealer obtained to him, and no one dealing with an automobile dealer expects that kind of service.

The conclusion that the plaintiff has failed to allege a breach of fiduciary obligation is not the end of the RICO claim. For while acknowledging that violations of the Truth in Lending Act are not predicate acts, the plaintiff argues that they become such when mail and wire communications are used to further them. It is a rare case of extension of credit that does not involve mail or wire communications, and so the practical effect of the plaintiff's argument would be to criminalize the

Truth in Lending Act--for remember that it is through the mail and wire fraud statutes, which are criminal, that the plaintiffs seek to convert TILA into a basis for RICO liability.

What is true is that conduct in violation of TILA might constitute a scheme to defraud within the meaning of the mail and wire fraud statutes, but this must be separately alleged. Concealing from credit purchasers the true cost of credit might be part of a scheme to defraud--or, if it resulted simply from a misunderstanding of a complex statute, might not be. The district court was right to think that if the defendants had not violated the Truth in Lending Act, a fortiori they had not engaged in criminal fraud. Since there was a violation, that ground is not robust. But as we read the complaint and the plaintiff's briefs in this court, his only theory of a violation of RICO (apart from breach of fiduciary obligation, which we have rejected) is that a violation of the Truth in Lending Act that is accomplished through mail or wire communications is a predicate act, and this theory is clearly unsound.

So we affirm the dismissal of the RICO claim, and of the Truth in Lending Act claim against the finance company; but we remand the other TILA claims to the district court for further proceedings consistent with this opinion. We also direct that court to reinstate, at least provisionally, the supplemental state law claims that it relinquished jurisdiction over when it decided that the plaintiff had failed to state a federal claim.

Affirmed in Part,
Reversed in Part, and Remanded.