10-1779-cv
Poulin v. Balise Auto Sales Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2010

(Argued: March 1, 2011        Decided: July 22, 2011)

Docket No. 10-1779-cv

————————————

SHARRON POULIN, Individually and on Behalf of All Others Similarly Situated,
LATISHA FRAZIER, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Appellants,*

—v.—

BALISE AUTO SALES, INC., d/b/a Balise Ready Credit,
AUTO CREDIT EXPRESS, INC.,

*Defendants-Appellees.*

————————————

B e f o r e:

RAGGI and LEVAL, *Circuit Judges*, and CEDARBAUM, *District Judge*.[*]

————————————

Appeal from a judgment of the United States District Court for the District of Connecticut (Haight, *J.*), entered on April 6, 2010, dismissing the complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the judgment of the district court is AFFIRMED.

---

[*] The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

DANIEL S. BLINN, Consumer Law Group, LLC, Rocky Hill, C.T., *for Plaintiffs-Appellants*.

JOHN B. FARLEY, (Kevin J. Greene, *on the brief*), Halloran & Sage LLP, Hartford, C.T., *for Defendants-Appellees*.

_____

CEDARBAUM, *District Judge*:

Sharron Poulin and Latisha Frazier appeal from a judgment of the United States District Court for the District of Connecticut (Haight, *J.*) dismissing their putative class-action complaint for failure to state a claim upon which relief can be granted. Plaintiffs seek to represent a class of customers with poor credit who purchased used automobiles from defendant Balise Auto Sales, Inc. ("Balise") under retail installment contracts that were subsequently assigned to defendant Auto Credit Express, Inc. ("ACE"). The complaint asserts that defendants violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and various state laws by burying hidden finance charges in the prices that plaintiffs were charged for these automobiles. The complaint alleges that Balise advertised the newer, more valuable used cars in its inventory at market prices, as measured by a particular used car buying guide, but sold the older, less valuable used cars to subprime credit customers for prices substantially higher than the market prices listed in the same guide.

Essentially, the complaint alleges that plaintiffs and those similarly situated received a bad bargain. But TILA is a disclosure statute, not a fair pricing law. Because the complaint does not contain any allegation from which it could plausibly be inferred that defendants failed to disclose a finance charge to plaintiffs, the judgment of the district court is affirmed.

**Background**

-2-

According to the complaint, Balise operates car dealerships in Connecticut, Massachusetts, and Rhode Island, and advertises itself as a business that caters to the needs of consumers who have difficulty obtaining automotive loans. ACE accepts Balise's assignment of sales contracts for cars that Balise has sold to customers with poor credit. The two companies are owned by the same or related interests and controlled by the same individuals.

In marketing and pricing the cars in its inventory, Balise distinguishes between newer and older model years. For a newer car, Balise advertises a retail price that roughly tracks the amount at which the NADA Official Used Car Guide, Eastern Edition ("NADA Guide") values the model. For an older car, however, Balise does not advertise any retail price at all. When prospective buyers with poor credit approach Balise about purchasing a car, it steers them toward one of the older cars. Balise sells the older cars at prices that are substantially higher than the market values given in the NADA Guide.

The named plaintiffs' buying experience is typical of a Balise customer with poor credit. In October 2006, Frazier purchased a 1998 Chevrolet Venture from the dealership for $7,995. The NADA Guide lists the market value of this model as $4,000. In February 2008, Poulin purchased a 1998 Saturn SL2 from Balise for $8,440. The NADA Guide lists the market value of this model as $3,900. Both Frazier and Poulin executed retail installment contracts which Balise subsequently assigned to ACE.

On October 22, 2008, Frazier and Poulin commenced a putative class action accusing Balise and ACE of violating 15 U.S.C. § 1638(a)(3), a TILA provision requiring a creditor to disclose any finance charge it imposes on a consumer. They also allege the violation of various state laws. Although the complaint does not state the finance charges actually disclosed, it asserts that Balise and ACE are deceptively burying the cost of credit within the purchase prices

of the cars that Balise sells to customers with poor credit. Plaintiffs theorize that, for each of these cars, the portion of the purchase price in excess of the model's NADA Guide value is not actually part of the cost of the car itself, but rather a hidden finance charge intended to compensate for the increased risk of lending to customers with poor credit. The complaint does not allege that Balise prices its older cars differently for customers with good credit or customers paying in cash. Indeed, the complaint is entirely silent as to whether such customers purchase cars from Balise's older inventory at all.

The named plaintiffs purport to assert these claims on their own behalf and on behalf of two groups of car purchasers. The "TILA Class," represented by Poulin, consists of individuals who, within the applicable statute of limitations, purchased a motor vehicle from Balise at a purchase price at least 35% greater than the NADA Guide value for the model purchased. The "Connecticut Class," represented by Poulin and Frazier, consists of individuals who, without regard to time limitation, purchased motor vehicles from Balise under the same circumstances.

Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On April 5, 2010, the district court granted the motion. *See Poulin v. Balise Auto Sales, Inc.*, No. 08 Civ. 01618, 2010 WL 1370862 (D. Conn. Apr. 5, 2010). The court first held that the complaint failed to state a viable claim under TILA. Then, once the complaint had been shorn of its sole federal claim, the court declined to exercise supplemental jurisdiction over the state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

This timely appeal followed.

## Discussion

We review de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011).

TILA's declared purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "TILA endeavors to enable consumers to evaluate credit offers separately from the purchase of merchandise, and thereby to create an active market providing more efficient credit prices." *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 326 (6th Cir. 2001).

To that end, TILA requires creditors to disclose any "finance charge" that they impose on consumers in a credit transaction. 15 U.S.C. § 1638(a)(3). The statute defines the term finance charge in an earlier section: "[T]he amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a).

The definition of a finance charge in TILA's implementing regulations (known collectively as "Regulation Z") uses similar language: "The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(a). The Federal Reserve Board, the agency that issues regulations under TILA, has also provided an official staff interpretation: "Charges imposed

uniformly in cash and credit transactions are not finance charges. In determining whether an item is a finance charge, the creditor should compare the credit transaction in question with a similar cash transaction." 12 C.F.R. Pt. 226 Supp. I, § 226.4.

Based on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under § 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in comparable transactions. For example, in *Cornist*, the Sixth Circuit held that "[a]n increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, *solely because he is a credit customer*, triggers TILA's disclosure requirements." 272 F.3d at 327 (emphasis in original). In that case, the defendant's markups (that is, the premiums over the cost of acquisition at which the defendant sold its cars) for credit customers were on average four to five times the markups for cash customers. *Id.* at 329. Based on that evidence, the court reversed the district court's grant of summary judgment for the defendants on the plaintiff's TILA claim because there was a genuine issue of fact as to whether this disparity truly depended on the customer's cash/credit status. *Id.*

Similarly, in *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998), the complaint alleged that the defendant's purported cash price for vehicles sold to customers paying on credit "substantially exceeds the value of the vehicle, and the price at which comparable vehicles are sold for cash, and includes part of the finance charge." *Id.* at 931. Interpreting the definition of a finance charge in 12 C.F.R. § 226.4(a), the Seventh Circuit explained that TILA requires a creditor to "disclose to a consumer buying on credit exactly how much he will pay for that credit." Id. at 932. The court held that the allegations in the complaint successfully stated a claim for a violation of that requirement. It reasoned:

In this case, [plaintiffs] allege that [defendant] is charging higher prices to customers who are buying cars on credit than to customers who are paying cash. In other words, credit customers, such as the [plaintiffs], are paying higher "cash" prices only because they are buying on credit. The higher cash price paid by these customers is therefore part of the cost of buying on credit. Under TILA, such a cost is a finance charge and must be disclosed to the consumer as such.

*Id.*; *accord Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 287 (7th Cir. 1997) (holding that the difference alleged between the price of a car warranty in credit transactions and the price of a car warranty in cash transactions constituted a finance charge that must be disclosed under TILA).

In contrast to the cases on which plaintiffs rely, however, the complaint in this case does not allege that subprime credit customers pay higher purchase prices than non-subprime credit customers for comparable merchandise. If the book values in the NADA Guide are a fair proxy for the purchased cars' market values, plaintiffs have alleged a bad bargain. But the complaint provides no facts from which to infer that that bad bargain stemmed from an undisclosed finance charge. The complaint contains no information about the price charged to cash purchasers of automobiles of the same vintage as those purchased by plaintiffs. The pleaded facts may portray the use of different prices, but the difference is measured by the age of the cars, not the customers' credit status. Because the complaint fails to allege purchase price discrimination based on credit status, it does not state an actionable claim under the theory embraced in *Cornist* and *Walker*. We therefore agree with the district court's conclusion that plaintiffs' complaint fails to state a claim upon which relief can be granted.

Anticipating this possibility, plaintiffs now ask us to remand the case to the district court in order to permit them to amend the complaint. We deny this request. Plaintiffs never sought

leave to amend in the court below.  Moreover, they have not provided any reason to expect that an amended complaint would cure the deficiency that led to the original complaint's dismissal.

**Conclusion**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.