Malinee B. **VIRACHACK**,
et al., Plaintiffs,

v.

**UNIVERSITY FORD dba Bob Baker Ford, Defendant.**

**No. 02 CV 0139 JM(JFS).**

United States District Court,
S.D. California.

April 30, 2003.

Frank J Fox, Majors and Fox, LLP, San Diego, CA, for Malinee B Virachack, Ritnarone T Virachack.

Regina Jill McClendon, Severson and Werson, San Francisco, CA, for University Ford dba Bob Baker Ford, Does, 1 through 100, inclusive.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MILLER, District Judge.

## I. INTRODUCTION

Plaintiffs Malinee and Ritnarone Virachack have filed this class action on behalf of themselves and others similarly situated alleging violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by the defendant automobile dealer Bob Baker Ford. The parties have filed cross-motions for summary judgment.[1] The dispositive issue before the court is whether a car dealership must disclose to the consumer a withheld manufacturer's rebate which is available to cash and credit purchasers but unavailable to consumers who receive a promotional annual percentage rate of interest ("APR"). Pursuant to Local Rule 7.1(d)(1), the court finds these

---

1. The First Amended Complaint ("FAC") alleges a single cause of action under 15 U.S.C. § 1601 et seq., specifically alleging violations of 15 U.S.C. § 1631(a) by defendant's failure to accurately make the disclosures required 15 U.S.C. § 1638(a)(2)-(5). Defendant seeks summary judgment on the entire case while plaintiffs seek summary adjudication on the issue of liability under TILA.

motions appropriate for decision without oral argument.

## II. BACKGROUND

The essential relevant facts are undisputed.[2] In November 2001, plaintiffs[3] entered into a Retail Installment Sales Contract and purchased a new Ford Explorer for a stated price of roughly $20,000 (excluding tax, license, dock fees, etc.) at a stated APR of 0.9%. Under this stated APR, defendant disclosed to plaintiffs that they incurred a total finance charge of approximately $417.

In order to receive the 0.9% APR, plaintiffs were required to agree to the assignment of the contract to Ford Motor Credit Company ("FMCC"). At the time of the execution of the contract, both plaintiffs and defendant intended that the contract be assigned to FMCC, and it is undisputed defendant did not inform plaintiffs that they would have received a $2,000 rebate from Ford Motor Company ("Ford") had they paid cash for the Explorer. Plaintiffs could not receive both the rebate and the 0.9% APR. Plaintiffs, however, could have received the manufacturer's $2,000 rebate and independently financed the purchase of the vehicle had they not received the promotional 0.9% APR.

In summary, defendant made the following TILA disclosures:

| | |
|---|---|
| (1) APR- | 0.9% |
| (2) FINANCE CHARGE- | $ 417.47 |
| (3) AMOUNT FINANCED- | $22,615.53 |
| (4) TOTAL OF PAYMENTS- | $23,032.80 |
| (5) TOTAL SALE PRICE- | $27,335.94 |

(includes down payment of approximately $4,000)

## III. DISCUSSION

A court may grant summary judgment when there are no genuine issues of mate-

rial fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). Additionally, summary adjudication is appropriate on discrete claims where no genuine issues of material fact exist as to that claim. Fed.R.Civ.P. 56(a). Neither party raises any genuine issue of material fact making summary judgment on the claimed violation of TILA appropriate in this case.

■■■ Congress enacted TILA based on the findings that free-market competition and the economy would be strengthened through the informed use of credit which, in turn, "results from an awareness of the cost thereof by consumers." 15 U.S.C. § 1601(a). Congress explicitly set forth the purpose of TILA in the Act:

> It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

*Id.; see also Mourning v. Family Pubs. Service, Inc.,* 411 U.S. 356, 364–65, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (TILA intended to prevent creditors from obscuring the cost of credit to consumers). As the Supreme Court has explained, "[m]eaningful disclosure does not mean *more* disclosure. Rather, it describes a balance between 'competing considerations of complete dis-

---

**2.** Defendant responds to a number of facts in plaintiffs' statement of undisputed facts by stating that the fact is disputed but that the dispute is immaterial to the issue before the court. Consequently, the court concludes that such "disputed" facts are immaterial for purposes of the motions before the court.

**3.** The term "plaintiffs" for purposes of this motion refers to the named class representatives, Malinee and Ritnarone Virachack.

closure and the need to avoid information overload.'" *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (*quoting* S.Rep. 96–73, p. 3 (1979)) (emphasis in original). In other words, the evaluation of a credit transaction should focus on "the economic substance of the transaction." *Williams v. Chartwell Financial Services, Ltd.,* 204 F.3d 748, 753 (7th Cir.2000). Furthermore, due to the inherent complexity in striking a meaningful balance, Congress granted the Federal Reserve Board ("FRB") "expansive authority ... to elaborate and expand the legal framework governing commerce in credit." *Ford Motor Credit Co.,* 444 U.S. at 560, 100 S.Ct. 790. Consequently, "traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting the statutory machinery in motion." *Id.* at 566, 100 S.Ct. 790 (citations omitted) (holding courts must defer to Federal Reserve Board staff opinions construing TILA or the underlying regulations unless such opinions are "demonstrably irrational").

In this case, the parties dispute whether TILA requires a car dealership to disclose a manufacturer's rebate that is unavailable to credit consumers buying at a promotional APR but available to cash consumers and credit consumers who receive an APR other than the promotional rate. More specifically, the issue is whether the forgone rebate is a "finance charge" under TILA, i.e., a charge imposed incident to the extension of credit, due to the fact that the rebate is withheld from credit consumers who receive the promotional APR. Initially, the court notes that neither party presents any statute, regulation, or official comment directly on point.[4]

■ As in any case of statutory and regulatory construction, the court begins its analysis with the text of the relevant statutes and regulations at issue. Under 15 U.S.C. § 1632(a), a creditor is required to disclose the amount of any "finance charge" clearly and conspicuously to the consumer. 15 U.S.C. § 1632(a). In turn, § 1605(a), broadly defines what constitutes a finance charge subject to disclosure:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

15 U.S.C. § 1605(a). In keeping with the text of § 1605(a), the FRB, in Regulation Z (12 C.F.R. § 226.4(a)), also defines what constitutes the finance charge:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

---

4. Defendants argue that the Comment 18(*b*)(2) explicitly allows a creditor to ignore manufacturer's rebates under TILA. However, the comment, *inter alia,* only addresses rebates *offered* to consumers and does not address the situation before the court. *See* 12 C.F.R. Pt. 226, Supp. I, Comment 18(*b*)(2). Where the rebates are offered to purchasers on credit, there is no question that the rebate is not part of the cost of credit since it is given *in addition* to financing. In contrast, the withholding of a manufacturer's rebate gives rise to the argument that a rebate was part of the cost of extending credit to a particular purchaser. Therefore, the comment does not support defendant's argument that the FRB has determined that a manufacturer's rebate may be ignored wholesale under TILA no matter what the circumstances.

12 C.F.R. § 226.4(a). In addition, 12 C.F.R. § 226.4 list specific examples of finance charges including "[d]iscounts [made] for the purpose of inducing payment by a means other than the use of credit." 12 C.F.R. § 226.4(a)(9). However, the official comments to this section state that discounts which are offered to both cash and credit purchasers are not included as part of a finance charge. 12 C.F.R. Pt. 226.4, Supp. I, Comment 4(a)(1)(i)(B).

With this statutory scheme in mind we turn to the contentions of the parties. In order to prevail, plaintiffs must establish that the rebate in question meets the four elements that prove a finance charge under 15 U.S.C. § 1605(a). This means that the rebate must be (1) a charge, (2) directly or indirectly payable by the consumer, (3) imposed directly or indirectly by the creditor, and (4) as an incident or condition of the extension of credit. 15 U.S.C. § 1605(a); *see also* 12 C.F.R. § 226.4(a). While the parties contest the applicability of various portions of the definition to the rebate withheld in this case, the court finds that the forgone rebate was not withheld incident to or as a condition of the extension of credit to plaintiffs and is therefore dispositive. Accordingly, the court does not reach the other portions of the definition addressed by the parties.

At the threshold, plaintiffs argue the undisclosed rebate constitutes a finance charge. Plaintiffs' premise is that the cost of credit to them is greater than the 0.9% APR disclosed since it fails to account for the $2,000 rebate that they must forgo in order to purchase at that specific rate. Plaintiffs maintain that the forgone $2,000 rebate was imposed as a condition of the extension of credit at the 0.9% rate and is thus hidden within the price of the vehicle either by defendant directly or indirectly based on the required assignment of the loan to Ford Motor Credit Company. Instead of receiving a 0.9% APR, plaintiffs argue that the hidden cost of the forgone $2,000 rebate would, if revealed, demonstrate that their credit purchase was made at a substantially higher APR (in this case 4.6%). Because the purpose of TILA is to inform purchasers of the actual cost of credit, plaintiffs urge the court to view the forgone rebate as a "hidden" finance charge buried in the price of the vehicle. In support, plaintiffs argue that this case is essentially indistinguishable from the decision in *Walker v. Wallace Auto Sales, Inc.,* 155 F.3d 927 (7th Cir.1998), since plaintiffs, like those in *Walker,* are required to pay a higher "cash" price to purchase on credit.

In *Walker,* the plaintiffs purchased a Lincoln Continental at a listed cash price of $14,040 from the defendant auto dealer. *Walker v. Wallace Auto Sales, Inc.,* 155 F.3d 927, 929 (7th Cir.1998). According to the "Blue Book" used car guide, the car had a retail value of $8,300. The plaintiffs paid $1,500 as a down payment leaving $13,300 to be financed at a 25% APR over four years. As a result, the plaintiffs were to pay $7,868 in interest causing the total sale price to be $21,168. After the sale was complete, the defendant sold the contract to Guardian, a named defendant, who specialized in purchasing retail sales contracts from auto dealers. Guardian purchased plaintiffs' contract at a $7,182 discount from the sale price paid by plaintiffs to the auto dealership. *Id.*

The plaintiffs filed suit alleging that the auto dealer had "artificially inflated the cost of the vehicle to cover the discount at which Guardian purchased the [plaintiffs'] sales contract and therefore imposed a 'hidden finance charge' on them in violation of TILA, 15 U.S.C. § 1638(a)(3)." *Walker,* 155 F.3d at 929. The district court dismissed the complaint relying

upon the Official Staff Commentary which provided that "[a] discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed on the consumer." *Id.* at 930 (*quoting* 12 C.F.R. Pt. 226, Supp. I, Comment 4(a)(2)).

The Seventh Circuit reversed. The court explained that TILA required a creditor to disclose the cost of credit for the purchase of a good. It reasoned that the discount given to Guardian, as alleged in the complaint, and imposed on a purchaser buying on credit was a finance charge under TILA:

> credit customers, such as [plaintiffs], are paying higher "cash" prices only because they are buying on credit. The higher cash price paid by these customers is therefore part of the cost of buying on credit. Under TILA, such a cost is a finance charge and must be disclosed to the consumer as such.

*Walker*, 155 F.3d at 932. The court also rejected the district court's reasoning that the discount was not "separately imposed" simply because the discount given to Guardian was included in the price of the car. To endorse such a definition would, the court reasoned, eviscerate TILA since a creditor could impose finance charges by simply including them in the "cash" price of the car when, in fact, cash purchasers paid less for the car. Consequently the

court held that "a charge should be considered 'separately imposed' on a credit consumer when it is imposed in credit transactions but not in cash transactions." *Id.* at 934.

In contrast, defendants argue, *inter alia*, that *Walker* is distinguishable because plaintiffs do not forgo the rebate, i.e., incur additional costs, due *solely* to their decision to finance the purchase of their car. This brings us to the core issue of this case. Is the forgone rebate a mandatory condition of the extension of credit? Plaintiffs argue that the answer is a definitive "yes," while acknowledging they could have purchased on credit, albeit at a different rate, and received the rebate at issue. Plaintiffs maintain, however, that the forgone rebate must be considered a finance charge because it was a condition of the extension of credit at the 0.9% promotional rate.

Contrary to plaintiffs' assertions, no "hidden" finance charge is being imposed upon plaintiffs simply because they were not informed of the cash rebate.[5] Simply put, a consumer may obtain the rebate and still purchase on independently obtained credit. Forgoing the rebate, then, is not a condition of the extension of credit but, instead, is merely a condition of receiving the promotional rate. Therefore, unlike *Walker*, no higher "cash" price was imposed on plaintiffs *solely* because plaintiffs purchased on credit or to mask a portion

---

**5.** While there is no dispute that plaintiffs were not aware of the withheld rebate, the court finds it somewhat incredulous that plaintiffs simply had no idea that a manufacturer's rebate was being given to consumers in the alternative to the promotional rebate. Plaintiffs' argument that this case involves some type of "shell" game between defendant, Ford Motor Company, and Ford Motor Credit Company in an attempt to impose a "hidden" charge itself appears to be somewhat "manufactured." Undoubtedly, consumers are inundated with car advertisements, through all forms of media, and have car advertisement information available to them literally at a finger's touch in this age of the internet. Consequently, the court is highly skeptical of plaintiffs' allegations that defendant was involved in a scheme to keep them "in the dark" concerning the options available to them for purchasing a vehicle. In any event, plaintiffs awareness, or unawareness, of the rebate is immaterial since TILA disclosures do not depend upon the consumer's subjective knowledge.

of the credit. Rather, plaintiffs simply had to forgo the rebate in order to take advantage of the promotional rate.[6] Moreover, presumably there would have been no bar to plaintiffs attempting to negotiate a lower purchase price through further negotiations for dealer discounting.

The reality of plaintiffs' transaction is that they were given a "discount" on the market interest rate in order to induce them to purchase their vehicle. Indeed, plaintiffs' own separate statement of facts posits that the promotional rate is below the market interest rate. The cash rebate is not a cost of credit imposed upon plaintiffs. Rather, the rebate is an option made available to both cash and credit purchasers in order to induce the purchase of Ford vehicles at a price that would otherwise be unavailable to those consumers. In essence, the promotional interest rate is simply a different form of the cash rebate in that both the rebate and the interest rate are forms of subsidizing the market price of the vehicle offered to consumers in order to generate sales. Thus, the rebate is a "discount" made available to consumers who wish to receive the promotional interest rate but in the form of the reduced APR rather than in cash. Therefore, plaintiffs have received the "discount" made available to cash and other credit purchasers illustrating that the forgone rebate is not a condition of the extension of credit. *See* 12 C.F.R. Pt. 226, Supp. I, Comment 4($a$)(i)(B) (discount available to both cash and credit consumers not a finance charge). Consequently, the record

does not support plaintiffs' argument that the forgone rebate is imposed as a condition of the extension of credit or that the rebate is being offered to induce purchases by means other than credit. Therefore, the court concludes that the cash rebate is not part of plaintiffs' cost of credit and need not be disclosed.

## IV. CONCLUSION

In summary, the plaintiffs were not required to forgo the cash rebate as an incident to or a condition of the extension of credit. Therefore, the cash rebate does not fall within the definition of a finance charge, and need not be disclosed under TILA.

For the foregoing reasons, the court grants defendant's motion for summary judgment and denies plaintiffs' motion for partial summary judgment. The clerk is instructed to close the file.

**IT IS SO ORDERED.**

---

6. *Walker* is also distinguishable because plaintiffs are not paying a higher "cash" price as that term is defined by the regulations. The Federal Reserve Board has defined the cash price to mean "the price at which a creditor, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction." 12 C.F.R. § 226.2(a)(9). Here, defendant receives the same amount for the sale price of the car regardless of whether the purchaser receives the promotional rate or the cash rebate. The record clearly shows that the rebate *may* be assigned to defendant by the purchaser but need not necessarily be assigned towards the purchase price. Consequently, the rebate is not reduction of the purchase price showing that plaintiffs do not pay a higher "cash" price than other purchasers.