**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MALINEE B. VIRACHACK; RITNARONE
T. VIRACHACK,
           *Plaintiffs-Appellants,*

           and

RACHELLE HARVEY,
                        *Plaintiff,*

           v.

UNIVERSITY FORD, dba: Bob Baker
Ford,
           *Defendant-Appellee.*

No. 03-55852

D.C. No.
CV-02-00139-
JTM/JFS

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
December 10, 2004—Pasadena, California

Filed May 20, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge B. Fletcher

## COUNSEL

Frank J. Fox, San Diego, California, for the plaintiffs-appellants.

Jan T. Chilton, San Francisco, California, for the defendant-appellee.

## OPINION

NOONAN, Circuit Judge:

Malinee B. Virachack and Ritnarone T. Virachack (the Virachacks) appeal the district court's grant of summary judg-

ment to University Ford, a California corporation doing business as Bob Baker Ford, in their action under the Truth In Lending Act (TILA), 15 U.S.C. § 1601 et seq. Holding that Bob Baker Ford did not fail to disclose the total finance charge, we affirm the judgement of the district court.

## FACTS

On November 18, 2001, the Virachacks bought a Ford Explorer from Bob Baker Ford. The purchase was partly on credit. Bob Baker Ford made the following statement in the Retail Sales Installment Contract executed by the Virachacks,

### Federal Truth-In-Lending Disclosure

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase, including your down payment of $4303.14 is |
|---|---|---|---|---|
| 0.90% | $417.47 (e) | $22615.33 | $23032.80 (e) | $27335.94 (e) |

(e) = estimate

The contract also stated that the Virachacks would make monthly payments of $479.85 for 48 months. The contract also reflected a sales tax of $1,748.47, based on the "cash price" of the vehicle of $23,268.

According to the affidavit of Nathaniel Torres, the finance manager of Bob Baker Ford, on the day the Virachacks bought the Explorer, Ford Motor Company was offering a $2,000 rebate to certain customers buying that model and year vehicle, but was not offering this rebate to customers buying on credit at the 0.9% rate. The availability of the rebate also depended, in part, on the geographical area in which the customer resided. The possibility of the rebate was not mentioned in the "Federal Truth-In-Lending Disclosure" of the contract.

According to Torres, had the Virachacks "desired a factory rebate and financing through Bob Baker Ford, they could have entered into a retail installment contract with Bob Baker Ford at a non-promotional interest rate offered by Ford Motor Credit Company, or they could have entered into a retail installment contract with Bob Baker Ford at whatever interest rate, promotional or not, was offered by any one of the other banks or finance companies to whom we regularly sell contracts."

## PROCEEDINGS

The present suit began as a class action in the Superior Court for the County of San Diego. Bob Baker Ford transferred it to the district court. By stipulation of the parties, the Virachacks were substituted for the original plaintiff, who was discovered to have entered a transaction with Bob Baker Ford where the rebate option was not available. The Virachacks alleged that the $2,000 cash rebate they might have received if they had paid cash should have been disclosed as part of the finance charge and that the failure to disclose violated the TILA, 15 U.S.C. § 1638(a)(2),(3), (4), and (5). They sought for themselves and for each member of the plaintiff class damages not to exceed the statutory maximum of the lesser of $500,000 or 1% of the defendant's net worth. *Id.* at § 1640(a)(2)(b).

After discovery, each side moved for summary judgment. Granting summary judgment to Bob Baker Ford, the district court stated:

> The reality of plaintiffs' transaction is that they were given a "discount" on the market interest rate in order to induce them to purchase their vehicle. Indeed, plaintiffs' own separate statement of facts posits that the promotional rate is below the market interest rate. The cash rebate is not a cost of credit imposed upon plaintiffs. Rather, the rebate is an

option made available to both cash and credit purchasers in order to induce the purchase of Ford vehicles at a price that would otherwise be unavailable to those consumers. In essence, the promotional interest rate is simply a different form of the cash rebate in that both the rebate and the interest rate are forms of subsidizing the market price of the vehicle offered to consumers in order to generate sales. Thus, the rebate is a "discount" made available to consumers who wish to receive the promotional interest rate but in the form of the reduced APR rather than in cash. Therefore, plaintiffs have received the "discount" made available to cash and other credit purchasers illustrating that the forgone rebate is not a condition of the extension of credit. *See* 12 C.F.R. Pt. 226, Supp. I, Comment 4(*a*)(i)(B) (discount available to both cash and credit consumers not a finance charge). Consequently, the record does not support plaintiffs' argument that the forgone rebate is imposed as a condition of the extension of credit or that the rebate is being offered to induce purchases by means other than credit. Therefore, the court concludes that the cash rebate is not part of plaintiffs' cost of credit and need not be disclosed.

*Virachack v. Univ. Ford*, 259 F. Supp.2d 1089, 1091 (S.D. Cal. 2003).

The Virachacks appeal.

## ANALYSIS

The case is governed by a statute with a broad purpose, "the informed use of credit" by consumers. 15 U.S.C. § 1601(a). The statute's carefully drawn terms are rendered even more precise by the regulations issued by the Federal Reserve Bank, the agency entrusted with the implementation of this law.

**[1]** The statute defines "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a).

**[2]** The statutory definition does not embrace a rebate that is withheld. A charge is a request for payment. A rebate is a reduction in payment. It is to turn topsy-turvy to contend that a rebate that is not given is a hidden charge.

**[3]** The Virachaks' case looks less implausible under Regulation Z of the Federal Reserve Bank. This authoritative interpretation of the statute lists among examples of finance charges the following: "Discounts for the purpose of inducing payments by a means other than the use of credit." FRB Regulation Z, 12 C.F.R. § 226.4(b)(9) (2004). How can a discount be a charge? It cannot be. What the Federal Reserve Bank means is that the presence of a discount for a cash transaction is an index that more is being charged for a credit transaction. The Virachacks contend that a rebate for cash on the purchase price is functionally the same as a discount for cash. The rebate is an index that more is being charged for credit. They refer to the Official Staff Commentary on the regulations:

> The seller of land offers individual tracts for $10,000 each. If the purchaser pays cash, the price is $9,000, but if the purchaser finances the tract with the seller the price is $10,000. The $1,000 difference is a finance charge for those who buy the tracts on credit.
>
> Commentary to Fed. Reserve Bd. Reg. Z, 12 C.F.R. part 226 Supp. I 374 para. 4(b)(9)

The preceding example treats the discount as evidence of purpose to induce payment in cash.

**[4]** The question for decision, then, is whether the $2,000 rebate was offered to induce customers to use means other than credit. The declaration of Nathaniel Torres is that inducement to pay with means other than credit was not the purpose of the offer. Although an employee of Bob Baker Ford, Torres acted as the agent of Ford Motor Company so far as the availability of the rebate was concerned and so may be relied on in his statement that the rebate would have been offered to the Virachacks if they had sought to buy on credit but not at the extraordinarily low rate of 0.9%. If we accept Torres's unchallenged account of the facts, Ford Motor Company denied the rebate only because the manufacturer did not want to offer two incentives to the same customer. According to Torres, the $2,000 rebate is not an index of a hidden credit charge but simply a subsidy from the manufacturer that was available only to those not getting the subsidized interest rate. The element of a purpose to induce a cash payment—the element critical to the Virachacks' case—is absent.

This account is confirmed by two facts also furnished by Torres. Bob Baker Ford did not determine eligibility for the rebate. If a rebate had been offered, the price of the vehicle for sales tax purposes would not have been affected; the tax would have been paid on the price before the rebate. The price is therefore the same on credit or cash terms.

**[5]** The Virachacks complain that, not being told of the possibility of the rebate in the "Federal Truth-In-Lending Disclosure," they never got to choose; that they, therefore, were not the informed users of credit that the federal law seeks to assure. Compliance with the TILA did not require them to be informed to this extent. They got a good deal. Seeking to get a windfall, they cannot get more than the statute and its regulations afford them.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

B. FLETCHER, Circuit Judge, dissenting:

The majority affirms the district court's summary judgment dismissal of the Virachacks' claim under the Truth in Lending Act ("TILA"), concluding their foregone rebate was not a finance charge. I respectfully dissent. A discount or rebate offered to purchasers paying with cash that is not extended to purchasers using credit is a finance charge. *See* F.R.B. Regulation Z, 12 C.F.R. § 226.4(b)(9) ("Regulation Z").

The Appellants, Malinee B. Virachack and Ritnarone T. Virachack, purchased a Ford Explorer from the Appellee, University Ford d/b/a Bob Baker Ford, the dealer and creditor. The Virachacks purchased the Explorer on a credit plan negotiated with Bob Baker Ford. The credit plan had an Average Percentage Rate ("APR") of 0.9%. To receive this APR, customers including the Virachacks had to forego a $2,000 manufacturer's rebate offered by Ford Motor Company ("Ford Motor") for the purchase of its Explorer. The $2,000 manufacturer's rebate was offered to all other customers purchasing an Explorer paying either cash or credit. The Virachacks argue the foregone rebate was a finance charge. As such, they argue the $2,000 increase in cost incurred by financing at 0.9% APR should have been disclosed to them under TILA.

A finance charge is defined by TILA "as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Bob Baker Ford argues the foregone rebate was not a finance charge requiring disclosure under TILA. The district court agreed and the majority opinion affirms.

As a general matter, discounts to purchasers using cash that are not extended to purchasers using credit are treated as finance charges. *See* 12 C.F.R. § 226.4(b)(9). Regulation Z[1]

---

[1]Regulation Z, 12 C.F.R. § 226, is the Federal Reserve Board's regulations implementing the Truth in Lending Act. Its purpose "is to promote

specifically lists "Discounts for the purpose of inducing payment by a means other than the use of credit" under examples of finance charges. *Id.* To further explain this principle the official staff interpretation states:

> *Discounts for payment by other than credit.* The discounts to induce payment by other than credit mentioned in § 226.4(b)(9) include, for example, the following situation:
>
> The seller of land offers individual tracts for $10,000 each. If the purchaser pays cash, the price is $9,000, but if the purchaser finances the tract with the seller the price is $10,000. The $1,000 difference is a finance charge for those who buy the tracts on credit.

12 C.F.R. Pt. 226, Supp. 1 § 226.4-4(b)(9)(1). A discount offered to customers that pay in cash but withheld from customers paying with a particular form of credit is considered a finance charge to those customers paying with the particular form of credit.[2] Withholding the rebate from these customers is necessarily a discount for the purpose of inducing payment by other means. This is a legal conclusion. A creditor's testimony on why he or she believes the rebate is withheld from

the informed use of customer credit by requiring disclosures about its terms and costs." *Id.* at § 226.1(b). To augment Regulation Z the Board also issues Official Staff Interpretations. 12 C.F.R. Pt. 226, Supp. I. The Supreme Court has said that because "Congress . . . delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit" that "absent a clear expression to the contrary" deference is due the Board's interpretations of TILA. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980).

[2]Credit cards and other forms of open-ended credit are exempt from this rule. *See* 15 U.S.C. § 1666f(b). The Virachacks' financing is a closed-end credit plan. *See* 12 C.F.R. § 226.2(a)(10) (defining closed-end credit); 12 C.F.R. § 226.2(a)(20) (defining open-end credit).

customers paying with a particular form of credit is not pertinent to this consideration. The result of withholding the rebate is a discount to cash paying customers as contrasted to customers paying with the 0.9% APR plan.

The example used in the official staff interpretation of land being sold for $10,000 to purchasers using credit and for $9,000 to purchasers using cash is analogous to the Virachacks' transaction. If the Virachacks had paid cash for their Ford Explorer they would have received the $2,000 rebate. But under the credit plan with 0.9% APR they were denied the rebate and as a result paid $2,000 (plus interest on the $2,000 loaned) more for their car than a cash purchaser. Ford Explorers sold to purchasers paying cash cost at least $2,000 less than the same car sold to purchasers paying with the 0.9% APR credit plan.

The Virachacks are not requesting a "windfall" as the majority opinion suggests. Maj. op. at 5474. Rather they simply want to be fully informed, as TILA requires, of the full costs of paying with the 0.9% APR credit plan. The credit plan extended to the Virachacks cost them $2,000 (plus interest) more than paying with cash would have cost them.

The district court found the foregone $2,000 rebate was not a finance charge.[3] The district court reasoned that the $2,000 rebate was available to people who paid with either cash or credit. The only group excluded from the $2,000 rebate was composed of people who paid with the 0.9% APR financing. The district court's flawed reasoning was as follows, "Simply put, a consumer may obtain the rebate and still purchase on independently obtained credit. Forgoing the rebate, then, is not a condition of the extension of credit but, instead, is merely a condition of receiving the promotional rate."

---

[3]The district court in *Virachack* adopted the reasoning of the only other federal court opinion on this issue *Coehlo v. Park Ridge Oldsmobile, Inc.*, 247 F.Supp.2d 1004 (D. Ill. 2003). No federal court of appeals has yet ruled on this issue.

The problem with this reasoning is that although forgoing the $2,000 rebate was not a cost for all purchasers using credit, it was a cost for all purchasers using Bob Baker Ford's 0.9% APR financing plan. The official staff interpretation of Regulation Z explains that when determining whether a charge is a finance charge one should look at the particular credit transaction at issue. 12 C.F.R. Pt. 226, Supp. 1 § 226.4-4(a)(1). The staff interpretation states "[c]harges imposed uniformly in cash and credit transactions are not finance charges. In determining whether an item is a finance charge, the creditor should compare *the credit transaction in question* with a similar cash transaction." *Id.* (emphasis added). This requires "the credit transaction in question" to be compared with a cash transaction. *Id.* If one compares the Virachacks' transaction with a cash transaction for a Ford Explorer then the Virachacks paid $2,000 (plus interest) more for their car than a cash purchaser would have paid.

At the time the Virachacks purchased their car, receiving the 0.9% APR credit required a purchaser to forego the $2,000 rebate. This was not a negotiable aspect of the sale. Persons receiving the 0.9% APR forfeited the rebate. Individuals paying cash or with other forms of credit were eligible for the rebate. Thus, in this case, the $2,000 rebate was withheld "as an incident to or as a condition of the extension of credit." 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). Foregoing the $2,000 credit was a cost of receiving Bob Baker Ford's 0.9% APR financing. The district court erred by comparing purchasers using credit as a general group to purchasers using cash. The fact that the Virachacks could seek other financing is irrelevant. When examining the costs of the credit terms offered, the appropriate comparison is between purchasers using the specific type of credit at issue and purchasers paying with cash. In this case, such a comparison reveals that the Virachacks and similarly situated customers paid $2,000 (plus interest) more for their vehicle than a cash purchaser paid for the same vehicle. This price differential for using the 0.9% APR financing was not disclosed to the Virachacks.

The central purpose of TILA is to provide "the informed use of credit" by requiring "meaningful disclosure of credit terms" to consumers. 15 U.S.C. § 1601; *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980). If Ford Motor gives a rebate to every Bob Baker Ford customer buying a Ford Explorer but withholds the rebate from those customers financing at 0.9% then the foregone rebate is a cost to the latter group of customers. If 0.9% APR customers are not informed of the $2,000 rebate then they are ignorant of the full cost of the credit. This conflicts with the explicitly stated purpose of TILA:

> It is the purpose of this subchapter [15 U.S.C. § 1601 *et seq.*] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). Not disclosing the $2,000 cost of the 0.9% financing means customers are making uninformed credit decisions. I believe the failure of Bob Baker Ford to disclose the foregone rebate violates TILA. I would reverse.