**Ruthie GIBSON, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**BOB WATSON CHEVROLET–GEO, INC., Defendant–Appellee.**

**Marion ABERCROMBIE, Plaintiff–Appellant,**

v.

**WILLIAM CHEVROLET–GEO, INC., Defendant–Appellee.**

**Eutiquio HERNANDEZ, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**VIDMAR BUICK CO., Defendant–Appellee.**

Nos. 96–2673, 96–2776 and 96–3093.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1997.

Decided April 23, 1997.

---

**284**

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner (argued), Charles E.

Petit, Edelman & Combs, Chicago, IL, for Plaintiffs-Appellants.

James R. Daly (argued), Robert C. Micheletto, Jayant W. Tambe, Jones, Day, Reavis & Pogue, Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.

POSNER, Chief Judge.

We have consolidated the appeals from the decisions dismissing on the pleadings three class-action suits against Chicago-area automobile dealers for violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* These suits are among some fifteen almost identical class actions filed by the same law firm against such dealers. For unexplained reasons the cases, having initially been randomly assigned to different district judges in the Northern District of Illinois, were *not* reassigned to a single judge, as authorized by N.D. Ill. R. 2.31, but remained with the original judges, eleven of whom have ruled on motions to dismiss the complaint or to grant summary judgment for the defendant. Six have denied such motions and five, including the three whose rulings are brought to us by these consolidated appeals, have granted them.

The facts are very simple, and can be illustrated by Gibson's case. She bought a used car from Bob Watson Chevrolet on credit. The dealer gave her a statement captioned "Itemization of Amount Financed." The statement contains a category referred to as "Amounts Paid to Others on Your Behalf," under which appears an entry that reads: "To North American for Extended Warranty $800.00." The dealer admits that a substantial though at present unknown amount of the $800 was retained by him rather than paid over to the company that issued the warranty (North American). The question is whether the failure to disclose this retention violates the Truth in Lending Act.

There are two possible violations. First, when the dealer sells cars for cash rather than on credit, it marks up the warranty less (according to the plaintiffs), and hence re-

tains a smaller amount of the warranty charge. Because the charge by the issuer of the warranty is presumably unaffected by the amount of the dealer's mark-up, the dealer is levying an additional charge on its credit customers that plaintiffs call a "finance charge," which must be disclosed to the customer. 15 U.S.C. §§ 1605(a), 1638(a)(3); 12 C.F.R. § 226.18(d) and Pt. 226, Supp. I § 4(a); *Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 940 (7th Cir.1995).

■ Second, the Act requires the lender or creditor to provide "a written itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor [the dealer here] on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). The argument that Bob Watson Chevrolet (as before, we're using Gibson's case as typical of all three cases) violated this provision is straightforward, and let us start with it. The amount to be paid to North American on Gibson's behalf is not stated correctly in the written itemization of the amount financed that Gibson received. It is true that the consumer is not entitled to the statement unless he makes a written request for it, § 1638(a)(2)(B); 12 C.F.R. § 226.18(c)(2), and there is no indication that Gibson did. But the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it. 12 C.F.R. Pt. 226, Supp. I § 18(c)(1). That appears to be what Bob Watson Chevrolet did. In any event, it furnished the itemization, and the itemization contains a false representation.

The defendants emphasize quite properly that the Act is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions. Its limited office is to protect consumers from being misled about the cost of credit. If the dealer retains the same amount of the warranty charge on credit purchases as he does on cash purchases, he is not misleading the consumer about the cost of buying on credit. But it is a contested issue whether the retention (mark-up) is the same; and even if it is, this is not a defense to the claim of inaccurate itemization. Section 1638(a)(2)(B)(iii) is free-standing. It requires disclosure—meaning, we do not understand the defendants to deny, *accurate* disclosure, *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir.1995)—of amounts paid to third persons by the creditor on the consumer's behalf, whether or not cash customers pay less. Bob Watson Chevrolet did not accurately disclose the amount that it paid North American for the extended warranty on the car that Gibson purchased. It said it paid $800; in fact it paid less.

The defendants argue that the Federal Reserve Board, the oracle of the Truth in Lending Act, 15 U.S.C. § 1604(a); *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565–69, 100 S.Ct. 790, 796–99, 63 L.Ed.2d 22 (1980); *McGee v. Kerr–Hickman Chrysler Plymouth, Inc.,* 93 F.3d 380, 383 (7th Cir.1996); *Cowen v. Bank United of Texas, FSB, supra,* 70 F.3d at 943, has issued an Official Staff Commentary that authorizes the dealers to do what they did here. The commentary (a part of the Federal Reserve Board's Regulation Z) addresses the situation in which the creditor retains a portion of the fee charged to a customer for a service provided by a third party, such as an extended warranty. It provides that "the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).'" 12 C.F.R. Pt. 226, Supp. I § 18(c)(1)(iii)(2). The commentary, being limited to the case in which the fee "is payable in the same amount in comparable cash and credit transactions," *id.,* has no bearing on the claim that the dealers in these cases are hiding a finance charge. But as to the other possible violation, the failure to itemize accurately, the defendants contend that the words "may" and "could" show that they can if they want disclose that they are retaining some of the fee, but that they are not required to do so. In other words, they read the commentary to say: "You may conceal the fact that you are pocketing part of the fee that is ostensibly for a

third party, but if you are a commercial saint and would *prefer* to tell the truth, you may do that too." So interpreted, however, the commentary not only would be preposterous; it would contradict the statute. The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention. Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch.

The defendants' only other argument is that they have a safe harbor in form H–3 (another part of Regulation Z), 12 C.F.R. Pt. 226, App. H–3. A disclosure that complies with the form is not actionable. 15 U.S.C. §§. 1604(b), 1640(f); 12 C.F.R. Pt. 226, Supp. I Introduction para. 1. Captioned "Amount Financed Itemization Model Form," the form contains a line for "Amounts paid to others on your behalf," and underneath it a line which reads "$___ to (other)." Compliance with the form in Gibson's case would have required Bob Watson Chevrolet to list next to North American's name the actual amount paid to North American for the extended warranty. So the H–3 defense fails too—and for the further and independent reason that the safe harbor is unavailable to disclosures required to be given numerically, such as disclosure of the *amount* financed. 15 U.S.C. § 1604(b).

Two observations, one procedural, the other substantive, remain to be made about the issue of the undisclosed markup as a finance charge, the first alleged violation. In only one of our three cases (Hernandez's) was it actually pressed as a separate violation. In the others it was folded in with the failure-to-itemize claim, perhaps because the latter is a stronger claim but doesn't permit as large an award of damages. 15 U.S.C. § 1640(a). But since we must reverse all three cases with respect to the second violation, so that further proceedings in the district court are necessary in any event, and since the other two cases were dismissed on the pleadings, we do not think that the claim of a hidden finance charge can be deemed waived in those cases by not having been made more perspicuously in the complaints.

But, coming to our substantive observation, we emphasize that the claim has merit only if the dealer's markup on third-party charges is *systematically* higher on sales to credit customers than on sales to cash customers. If a dealer merely charges what the traffic will bear, the fact that a *particular* credit customer may be paying a higher mark-up than a *particular* cash customer would not transform the difference in mark-ups into a finance charge; it would have in fact no causal relation to the extension of credit. We cannot find a case that holds this, but it seems clear as a matter of principle; and it may very well describe this case—but the plaintiffs are entitled to an opportunity to show that it does not.

It wouldn't surprise us if the district judges in these three cases, and the judges in the similar cases that have been dismissed, thought that the plaintiffs' law firm is harassing Chicago-area automobile dealers with complaints about purely technical violations of a highly technical and much-criticized statute. Yet it is far from clear that the alleged violations should be regarded as entirely technical, even the violation of the requirement of accurate itemization of third-party charges. The consumer would have a greater incentive to shop around for an extended warranty, rather than take the one offered by the dealer, if he realized that the dealer was charging what the defendants' lawyer described as a "commission," and apparently a very sizable one, for its efforts in procuring the warranty from a third party. Or the consumer might be more prone to haggle than if he thought that the entire fee had been levied by a third party and so was outside the dealer's direct control. Or he might go to another dealer in search of lower mark-ups on third-party charges.

It is true that exposing this little fraud is a benefit only tenuously related to the objectives of the Truth in Lending Act, on which see 15 U.S.C. § 1601 (declaration of purpose). It is almost as great a fraud on cash purchasers as on credit purchasers; yet its exposure will benefit only the latter. (The relation that we are describing as tenuous lies in the fact that the size of the dealer's "commission" may be a clue to the presence

of a hidden finance charge.) But statutes often outrun their rationales. We do not know why the drafters wanted third-party transactions listed separately, and by both amount and payee. There may have been a concern that nominal third-party payees might turn out to be affiliates of the creditor, or a desire to help consumers separate credit charges from other charges; the latter goal in particular would tie the requirement a little more securely to the underlying purposes of the statute. But we are just guessing.

The claim that what the dealers were doing here is concealing a finance charge has a closer connection to the Act's purposes. If the amount retained of the fee for an extended warranty or other third-party service is greater in credit transactions than in cash transactions, then in deciding whether to pay cash or buy on credit the consumer will assume that if he pays cash he will have to pay the same additional fee to get the extended warranty; if the facts are as the plaintiffs claim, he would not. The purchaser thinks he'll have to pay $800 for an extended warranty whether he pays cash or buys on credit, whereas if the retention really is smaller on cash purchases than on credit purchases and the third party's fee net of the retention is the same, the customer will not have to pay $800 if he pays cash for the car. This is a type of fraud that goes to the heart of the concerns that actuate the Truth in Lending Act. Cf. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 366–68, 93 S.Ct. 1652, 1659–60, 36 L.Ed.2d 318 (1973).

Anyway the issue is not whether these violations are technical, or whether technical violations should be actionable, or whether consumer class actions should be discouraged, but whether the complaints in these cases state a claim. And since they do, the dismissal of the plaintiffs' state-law fraud claims on the ground that disclosures that comply with the Truth in Lending Act do not violate the Illinois consumer protection laws, 815 ILCS 375/5(4), 505/2, which confer immunity for acts "specifically authorized" by a federal or state agency, 815 ILCS 505/10b(1); *Lanier v. Associates Finance, Inc.*, 114 Ill.2d 1, 101 Ill.Dec. 852, 859, 499 N.E.2d 440, 447

(1986), was erroneous too. The judgments are therefore reversed with instructions to reinstate the lawsuits. We hope it's not too late for the district court to reassign all the identical Truth in Lending auto dealer class actions to one judge.

REVERSED AND REMANDED.