TRAXLER, Circuit Judge,
dissenting:
I do not believe that Star established its compliance with the requirements under *226 the Truth in Lending Act (“TILA”) for inclusion in the “amount financed” of the premium for vendor’s single interest insurance (“VSI”). I therefore respectfully dissent.
TILA requires a creditor to make a correct disclosure of the amount of the finance charge that the consumer will pay over the life of the financing agreement, as well as the total amount financed under the agreement. See 15 U.S.C.A. §§ 1638(a)(2)(A), (a)(3) (West 1998). Under TILA, premiums for insurance against property loss or damage must be included in the finance charge
unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.
15 U.S.C.A. § 1605(c) (West 1998). The district court concluded that Star sufficiently disclosed that Hicks could choose from whom she purchased the VSI insurance and the cost of the insurance if purchased through Star. Even if this conclusion is correct, it is not the end of the inquiry. TILA requires a creditor to accurately disclose the amount of the finance charge and the amount financed. See, e.g., Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir.1997) (explaining that TILA “requires disclosure— meaning ... accurate disclosure”); Fairley v. Turan-Foley Imports, Inc., 65 F.3d 475, 479 (5th Cir.1995) (“Regulation Z [which implements TILA] sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate.”). If a fee that the statute or regulations require be included in the finance charge is improperly included in the amount financed, then neither the finance charge nor the amount financed were accurately disclosed to the consumer. See Adams v. Plaza Finance Co., 168 F.3d 932, 936 (7th Cir.1999) (“Since [TILA] permits premiums for non-filing insurance to be included in the amount financed but requires default insurance premiums to be included in the interest charge, a lender cannot be permitted to designate a premium as being for nonfiling insurance if it is really, clearly, and always for default insurance.”); Edwards v. Your Credit, Inc., 148 F.3d 427, 442 (5th Cir.1998) (vacating grant of summary judgment to creditor because questions of fact existed as to whether insurance premium included in amount financed was in reality for non-filing insurance, which is not considered part of the finance charge, or was for general default insurance, which must be included as part of the finance charge).
Regulation Z explains that the property insurance referred to in section 1605(c) for which the premiums may be included in the amount financed encompasses single-interest insurance “if the insurer waives all right of subrogation against the consumer.” 12 C.F.R. § 226.4(d)(2) n. 5 (2000). As used in the regulations, single-interest insurance
refers only to the types of coverage traditionally included in the term vendors’ single-interest insurance (or VSI), that is, protection of tangible property against normal property damage, concealment, confiscation, conversion, embezzlement, and skip. Some comprehensive insurance policies may include a variety of additional coverages, such as repossession insurance and holder-indue course insurance. These types of coverage do not constitute single-inter *227 est insurance for purposes of the regulation, and premiums for them do not qualify for exclusion from the finance charge under § 2264(d). If a policy that is primarily VSI also provides coverages that are not VSI or other property insurance, a portion of the premiums must be allocated to the nonexcludable coverages and included in the finance charge. However, such allocation is not required if the total premium in fact attributable to all of the non-VSI coverages included in the policy is $1.00 or less (or $5.00 or less in the case of a multi-year policy).
12 C.F.R. Pt. 226, Supp. I, comment. 4(d), par. 10 (emphasis added).[1] The district court’s ruling, however, makes no mention of these requirements for excluding a VSI premium from the finance charge. And from the record before us, I cannot conclude that, notwithstanding the district court’s failure to consider all of the requirements for exclusion of the premium from the finance charge, summary judgment was properly granted to Star.
The only evidence in the record regarding the waiver of subrogation requirement and the traditional-risk coverage requirement is an affidavit from a First Virginia Bank officer explaining the nature of the VSI policy referred to in the installment sales contracts the bank purchased from Star. The affidavit, which was never mentioned by the district court in its order, asserts that the VSI policy “waived any right of subrogation against the consumer” and that “[tjhere was no coverage under the policy for pecuniary default by the consumer.” J.A. 63. This affidavit was not served with Star’s motion for summary judgment but instead was served the day before the summary judgment hearing.
To establish its entitlement to summary judgment, Star was required to demonstrate that it fully complied with TILA and regulation Z, including the requirement that single-interest insurance must waive all rights of subrogation and the traditional-risk-coverage requirement.[2] See, e.g., Wright v. Tower Loan of Miss., Inc., 679 F.2d 436, 444 (5th Cir.1982) (explaining that the creditor bears the burden of proving compliance with TILA and regulation Z). The affidavit, therefore, should have been submitted at least ten days before the summary judgment hearing. See Fed. R.Civ.P. 56(c).[3] Assuming that the affidavit is otherwise sufficient to establish Star’s compliance with TILA, I believe it would be improper to rely on it to affirm the grant of summary judgment given that Hicks had no opportunity to respond to the affidavit.
Moreover, even if the affidavit is properly viewed as part of Star’s opposition to Hick’s motion for summary judgment so that the affidavit was timely filed, see Fed. R.Civ.P. 56(c) (stating that opposing affidavits may be served “prior to the day of hearing”), I do not believe summary judg *228 merit is proper. The only way Hicks could confirm or refute the eleventh-hour affidavit’s description of the terms of the VSI policy was through the policy itself. However, despite requests by Hicks during discovery, Star never provided Hicks with a copy of the policy. While Star may not have had the policy in its possession, it certainly had access to the policy through First Virginia Bank, just as it had the ability to obtain the affidavit from the bank officer. In my view, it would be wholly inappropriate to grant Star summary judgment on the basis of a last minute affidavit apparently never considered by the district court when Star failed to provide Hicks with the only document that could refute the affidavit.
I would conclude that Star failed to establish its compliance with the relevant statutory and regulatory requirements and that Star, therefore, was not entitled to summary judgment. I would reverse the grant of summary judgment to Star and remand for further proceedings. Accordingly, I dissent.

. Although Star does not raise the issue, I note that TILA regulations and staff commentary are generally "dispositive” unless "demonstrably irrational.” Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

. Although Star immediately assigned the installment contract in this case to First Virginia bank, Star is the creditor in the transaction for purposes of TILA. See 15 U.S.C.A. § 1602(f) (West 1998); 12 C.F.R. § 226.2(17) (2000). Thus, whether Star or the bank actually purchased the VSI policy, it was Star’s responsibility as the creditor to comply with TILA’s requirements.

. At the summary judgment hearing, Hicks objected to the affidavit on timeliness grounds, but the district court’s ruling on the motion is not revealed in the joint appendix. As noted, however, the court did not mention the affidavit in its order.