**In re Verna L. DIXON, Debtor.**

**Verna L. Dixon, Plaintiff,**

v.

**World Finance Corporation of Georgia d/b/a/ Freeman Finance Company, Defendant.**

**Bankruptcy No. 09–90426–MGD. Adversary No. 10–06022.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 15, 2010.

Ralph Goldberg, Goldberg & Cuvillier, P.C., Decatur, GA, for Plaintiff.

Michael T. Nations, Nations, Toman & McKnight, LLP, Atlanta, GA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SECOND MOTION TO AMEND TO ADD A CLAIM

MARY GRACE DIEHL, Bankruptcy Judge.

The above-styled adversary proceeding is before the Court on Verna L. Dixon's ("Plaintiff") Motion to Amend to Substitute Party Name ("Motion to Amend") (Docket Nos. 12 & 14), Plaintiff's Second Motion to Amend to Add Claim ("Second Motion to Amend") (Docket Nos. 13 & 15), and World Finance Corporation of Georgia's ("Defendant") Motion for Summary Judgment (Docket Nos. 7, 8, 11 & 16).[1] Defendant consented to Plaintiff's Motion to Amend, allowing Plaintiff to amend and substitute the proper legal name for Defendant—World Finance Corporation of Georgia d/b/a/ Freeman Finance Company. This Order grants Plaintiff's Motion to Amend. Defendant contests Plaintiff's Second Motion to Amend, which requests that Plaintiff be granted leave to add a claim under Georgia's Industrial Loan Act. O.C.G.A. § 7-3-1 *et seq.* Defendant's Motion for Summary Judgment ("Motion") predates the Plaintiff's Second Motion to Amend, and it will be addressed first. Defendant's Motion was filed in response to Plaintiff's Complaint for damages under

---

1. Docket number 11 is titled as Plaintiff's Response to Defendant's Motion for Summary Judgment. The conclusion of this document requests that "the Court should grant Plaintiff [sic] partial summary judgment on all issues." To the extent Plaintiff intended this Response to serve as her own Motion for Summary Judgment, Plaintiff is not entitled to judgment in her favor for the reasons set forth herein.

the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, related to a 2009 car loan made by Defendant to Plaintiff.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). The parties agree that this is a core matter under 28 U.S.C. § 157(b)(2).

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982). Where the nonmoving party bears the burden of proof at trial, the burden can be satisfied if the moving party demonstrates the absence of evidence supporting the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, the material facts are undisputed; therefore, summary judgment is appropriate.

## I. FACTUAL BACKGROUND

Plaintiff entered into a loan contract with Defendant on March 19, 2009. The loan was secured by her 1993 Volvo. The loan required Defendant to maintain property insurance on the vehicle. Defendant disclosed in the Credit Insurance Disclosure Statement that Plaintiff could select the insurer and that insurance could be provided through an existing policy. Plaintiff selected to obtain automobile insurance with Defendant, as lender. Defendant disclosed that the cost of Single Interest Vehicle Insurance ("VSI") [2] would be $376.00. The loan agreement included an asterisk beside the insurance charge. Included in the top portion of the loan agreement was the following: " * WE MAY RETAIN A PORTION OF THESE CHARGES." (Defendant's Exh. 1, p. 1). Defendant did not retain any portion of the VSI insurance premium but received a 50% commission on premiums remitted to the unaffiliated insurance company. (Docket No. 11–2; Defendant's Interrogatory Response ¶ 1).

As part of the March 19, 2009 loan transaction, Plaintiff reviewed and signed the Credit Insurance Disclosure Statement, which included an acknowledgment

---

**2.** Typical vehicle insurance protects the value of the vehicle. VSI "protects only the creditor's interest, defined as the unpaid balance [of the loan] at the time of the occurrence of the insured risk." *Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 423 n. 1 (N.D.Ill. 1978); *Dixon v. S & S Loan Serv.*, 754 F.Supp. 1567, 1571 (S.D.Ga.1990).

that the lender had a financial interest in the sale of the VSI by way of commission or other income. The Credit Insurance Disclosure Statement also stated that "[t]he [l]ender may retain a portion of the premium." The Credit Insurance Disclosure Statement also noted that the "Premium/Cost to You" for VSI was $376.00. Plaintiff purchased the VSI [3] through Defendant. Defendant included the VSI premium as part of the amount financed in this transaction, and the $376.00 VSI premium was itemized in the amount financed.

At the time of making the loan, Plaintiff was given an Insured's Copy of the terms and conditional applicable to the insurance policy she purchased. Paragraph D under the "Single Interest Coverage" section of the policy reads:

> *Waiver of Subrogation:* Except in the case of fraudulent actions of the Insured Creditor or Insured Debtor, the Company waives any right to subrogation against the Insured Creditor or the Insured Debtor.

(Defendant's Exhibit II, p. 1).

## II. DISCUSSION AND LAW

### A. Defendant's Motion for Summary Judgment

Plaintiff alleges a TILA violation based on Defendant's inclusion of the VSI premium in the amount financed. Plaintiff asserts that VSI premium should have been treated as part of the finance charge. Defendant submits that the loan transaction, including treatment of the VSI premium in the amount financed, was proper and complied with TILA.

TILA was enacted to ensure meaningful disclosure of credit terms to best allow a customer to make an informed credit decision. [1]15 U.S.C. § 1601(a); *see also Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). TILA's implementing regulation is known as "Regulation Z." 12 C.F.R. § 226.1. The parties do not contest that TILA is applicable to this transaction, and the Court agrees because the requirements under 12 C.F.R. § 226.1(c)(1) have been satisfied.

The legal issue presented in this case is narrow—whether Defendant's inclusion of the VSI premium in the amount financed was proper. Section 226.4 governs finance charges. Generally, a finance charge is the "cost of consumer credit as a dollar amount" and "does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(a). Subsection (b) of § 226.4 lists examples of finance charges, and explains that subsections (c) through (e) provide exclusions to finance charges. Insurance is expressly referenced in subsection (d), and property insurance premiums are addressed in subsection (d)(2), which provides in pertinent part:

> (2) Premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property,[5] may be excluded from the finance charge if the following conditions are met:
>
> (i) The insurance coverage may be obtained from a person of the consumer's choice,[6] and this fact is disclosed.
>
> (ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of insurance shall also be

---

**3.** The policy is termed Personal Property and/or Vehicle Creditor Protection Policy.

(Defendant's Exhibit II).

disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

---

5. This includes single interest insurance if the insurer waives all right of subrogation against the consumer.

6. A creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer.

12 C.F.R. § 226.4(d)(2).

Thus, for a creditor to exclude the VSI premium from the finance charge, three requirements must be satisfied by the creditor. First, the creditor must disclose to the consumer that the coverage may be obtained from an entity of her choice. 12 C.F.R. § 226.4(d)(2)(i). Second, if the consumer selects insurance carried by the creditor, then amount of the premium must be disclosed. 12 C.F.R. § 226.4(d)(2)(ii). Third, if the insurance is single interest, the insurer must waive all subrogation rights against the consumer. 12 C.F.R. § 226.4(d)(2) n. 5.

The parties agree that the first two requirements listed above were satisfied in this transaction. The undisputed facts show that Defendant disclosed that Plaintiff could obtain property insurance from her provider of choice and that the VSI premium of $376.00 was properly disclosed and itemized in the amount financed. With regard to the above-referenced third requirement, Plaintiff alleges a TILA violation based on Defendant's subrogation clause. Plaintiff argues that the qualifying language used by Defendant, "except in the cases of fraudulent actions of the Insured Creditor or Insured Debtor," fails to satisfy the waiver of *all* subrogation rights by Defendant. Plaintiff also asserts that

because Defendant retained a portion of the stated VSI premium, then that amount may not be included in the amount financed. Defendant's inclusion of the entire premium in the amount finance is an alternative basis for the alleged TILA violations. These arguments will be addressed in turn.

**1. Because Defendant satisfactorily waived its subrogation rights against Plaintiff, including the single interest insurance premium in the amount financed does not violate TILA.**

██ Property insurance premiums for single interest insurance may be excluded from the finance charge if the insurer waives all right of subrogation against the consumer. 12 C.F.R. § 226.4(d)(2) n. 5. Defendant's Exhibit II shows that Plaintiff received an insured's copy of the insurance policy, which included a waiver of subrogation clause. The clause reads: "Except in the case of fraudulent actions of the Insured Creditor or Insured Debtor, the Company waives any right to subrogation against the Insured Creditor or Insured Debtor." (Defendant's Exh. II, p. 1). Plaintiff asserts that the qualifying language, "[e]xcept in the case of fraudulent actions of the Insured Creditor or Insured Debtor," in the waiver clause prevents Defendant from satisfying the requirement provided in 12 C.F.R. § 226.4(d)(2) n. 5. According to Plaintiff, without a proper waiver, Defendant's inclusion of the VSI premium in the amount financed would amount to a TILA violation. Defendant counters that the waiver is sufficient to meet TILA's disclosure requirements and the requirements of 12 C.F.R. § 226.4(d)(2) are fully satisfied.

The applicable statutory language in footnote 5 of 12 C.F.R. § 226.4(d)(2) clearly states that all subrogation rights must be waived. As the Plaintiff points out, the

official commentary on this section reiterates that exclusion from the finance charge is allowable when the insurer waives any right of subrogation. OFF. CMT. 226.4(d) ¶ 9. The waiver of subrogation clause at issue does provide an exception in the case of fraudulent actions by Insured Creditor or Insured Debtor. The Court cannot impose liability based on this clause without a further inquiry regarding the purpose of this disclosure and any related law on the matter.

The clause at issue before the Court is undoubtedly more limited than what Plaintiff argues is required in an unqualified waiver. TILA's disclosure purpose, along with the Court's interest in the substance of the waiver makes this a more complicated issue. Plaintiff presents no caselaw to support its position that a qualified waiver based on fraud negates the requisite waiver of subrogation rights within the context of single interest insurance. Instead, Plaintiff argues that paragraph 10 of the Official Commentary gives examples of subrogation rights that must be waived. Plaintiff quotes "concealment, confiscation, conversion, embezzlement, and skip." OFF. CMT. 226.4(d) ¶ 10. However, paragraph 10 is titled "Single-interest insurance defined" and the list is intended to show what typical coverage single-interest insurance may provide. The Court does not interpret this commentary as a dispositive requirement of coverage. Further, the Court is not convinced that Defendant's limited exclusion of fraud is fatal to the waiver requirement.

■ "TILA is a disclosure statute; [4] it does not regulate substantively consumer credit but rather 'requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction.'" *Szumny v. American Gen. Fin., Inc.,* 246 F.3d 1065, 1070 (7th Cir. 2001) (quoting *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1282 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981)). Substantive rights are still governed by state law. TILA as federal law merely regulates the disclosures associated with such substantive rights. *Valencia v. Anderson Bros. Ford,* 617 F.2d at 1285 n. 2. Further, with few exceptions, which are inapplicable here, TILA and its regulations "do not affect the validity or enforceability of any contract or obligation under State or Federal law." 15 U.S.C. § 1610(d). The waiver is not inaccurate. Fraud at the inception in the transaction would not prevent the insurer from taking action against the party or parties, regardless of the subrogation clause. Also, under Georgia law, a defrauded insurance company could seek to treat the contract as void. O.C.G.A. § 13–4–60.

TILA is a disclosure statute, and the waiver of subrogation clause, as written, sufficiently discloses the waiver of subrogation rights required by 12 C.F.R. § 226.4(d)(2) n. 5. The clause provides that "any" right to subrogation is waived except with incidents of fraud. For disclosure purposes, the Court finds this sufficient to allow Defendant to exclude the VSI premium from the finance charge and include it in the amount financed, as permitted by 12 C.F.R. § 226.4(d).

**2. Defendant's inclusion of the entire premium amount in the amount financed does not violate TILA.**

■ Plaintiff also claims Defendant violated TILA by retaining a portion of the

4. TILA was enacted to assure a "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *see also Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 285 (7th Cir.1997) (explaining that TILA's purpose is to "protect consumers from being misled about the cost of credit").

VSI premium and including the entire amount in the amount financed. This legal theory is vague and unsupported by law and the factual record before the Court. The parties agree that Defendant properly disclosed the premium amount and Defendant's financial interest in the VSI purchased by Plaintiff as part of the transaction. The parties disagree as to whether Defendant's commission could be included in the amount financed without violating TILA.

Plaintiff asserts that 12 C.F.R. § 226.18(c)(1)(iii) provides the basis for Defendant's violation. Section 226.18 governs the content of disclosures under TILA, and subsection c is titled, "Itemization of amount financed." It provides:

(1) A separate written itemization of the amount financed, including: [40]

(i) The amount of any proceeds distributed directly to the consumer.

(ii) The amount credited to the consumer's account with the creditor.

(iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.[41]

---

40. Good faith estimates of settlement costs provided for transactions subject to the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) may be substituted for the disclosures required by paragraph (c) of this section.

41. The following payees may be described using generic or other general terms and need not be further identified: public officials or government agencies, credit reporting agencies, appraisers, and insurance companies.

12 C.F.R. § 226.18(c)(1)(iii).

Plaintiff is correct that § 226.18(c)(1)(iii) requires that charges payable to others on the consumer's behalf must be disclosed in the itemization of the amount financed. Here, Defendant has fully complied with this requirement. The parties agree that the amount of the VSI premium was properly disclosed and itemized and that Defendant's financial interest was disclosed. Because Defendant met the requirements under 12 C.F.R. § 226.4(d), Defendant's inclusion of the VSI premium as an amount financed is permissible and does not violate TILA.

Plaintiff submits that § 226.18(c)(1)(iii) obligates Defendant to segregate the commission Defendant receives from the VSI premium from the total amount annual premium amount paid by Plaintiff. There is no caselaw in support of this assertion. Plaintiff's legal theory seems to be that because insurance companies are expressly noted in footnote 41 of § 226.18(c)(1)(iii) that somehow Defendant's failure to note the commission amount results in the equivalent of hiding a fee that should be included in the finance charge instead of the amount financed. A commission paid to Defendant, though, is not a charge to Plaintiff. The cost of the transaction is not inflated by a commission-based relationship. Further, the factual record before the Court includes, as supplemented by Plaintiff's introduction of Defendant's response to Plaintiff's Interrogatories, provides that Defendant did not retain any portion of the premium.

Plaintiff goes on to cite *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 (7th Cir.1997), in support of her legal theory. *Gibson* provides no support for Plaintiff's position. In *Gibson*, the issue was whether plaintiff's complaint stated a claim where a car dealer allegedly engaged in a practice of charging its credit customers more for third party extended warranty protection than its cash customers. *Id.* at 284–85. The Seventh Circuit stated that if plaintiff's allegations were true then the dealer's practice would amount to hiding a finance charge without properly disclosing the charge. *Id.* at 285. Plaintiff's allega-

tions, here, are clearly distinct. In fact, there would be no need for single-interest insurance in a cash transaction because there would be no lender protecting its collateral. A requirement of VSI and the inclusion of an insurance premium in the transaction cost is only relevant in a credit transaction. Plaintiff's apparent interpretation that § 226.18(c)(1)(iii) would act as an absolute requirement to include any commission resulting from an insurance sale with a finance charge is misplaced.

Section 226.18(c)(1)(iii) does not require anything more than what Defendant disclosed-the insurance premium amount and Defendant's financial interest in the insurance. These disclosures, along with satisfying the requirements under § 226.4(d), allow the premium to be excluded from the finance charge and included in the amount financed without a TILA violation.

### B. Plaintiff's Second Motion to Amend to Add Claim

Plaintiff's Second Motion to Amend and Defendant's opposition thereto is also pending before the Court. (Docket Nos. 13 & 15). Plaintiff seeks to add a claim to her complaint under the Georgia Industrial Loan Act ("GILA"), O.C.G.A. § 7–3–1 *et seq.* Specifically, Plaintiff alleges that Defendant's retention of any portion of the VSI premium is in violation of O.C.G.A. § 7–3–15. Defendant opposes Plaintiff's Second Motion to Amend on the basis that the claim is futile.

Plaintiff requires court permission to add this claim because this is Plaintiff's second motion to amend. Fed.R.Civ.P. 15(a)(1) ("A party may amend its pleading *once* as a matter of course . . . ."). Rule 15 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides a liberal and permissive standard for amending a complaint.

"The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).

There are limits to the liberal standard of favoring amendments to allow the merits of the claim to be tested. There must be a "justifying reason" for a court to deny leave. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Halliburton & Assoc. v. Henderson,* 774 F.2d 441, 443 (11th Cir. 1985) ("substantial reason" needed). The following factors may serve as a basis to deny a motion to amend: (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001) (citing *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. 227). Defendant asserts that Plaintiff's Second Motion to Amend should be denied based on the futility of its claim.

Futility means that the amended complaint would fail to state a claim upon which relief could be granted. *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1042 (11th Cir.1986). The same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is used to determine futility. *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir.2000); *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1085 (7th Cir.1997); *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996). To withstand a motion to dismiss, a plaintiff must allege in the complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A

claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556, 127 S.Ct. 1955.

■ Plaintiff's Second Motion to Amend seeks to add a GILA claim under O.C.G.A. § 7–3–15 based on a § 7–3–14(3). Section 7–3–15 provides, in relevant part, that "[n]o licensee shall charge, contract for, or receive any other or further amount in connection with any loans authorized by this chapter in addition to those provided in Code Section 7–3–14...." O.C.G.A. § 7–3–15. There are two separate basis for the Court finding that Plaintiff's claim is futile. Plaintiff's proposed addition does not create a plausible claim. The legal theory upon which Plaintiff rests is vague, at best. Plaintiff quotes O.C.G.A. § 7–3–14(3), in part, to support its proposed additional claim: "A licensee may charge and collect from the borrower premiums *actually paid* or to be paid *for insurance obtained for the borrower.*" O.C.G.A. § 7–3–14(3) (emphasis added by Plaintiff). Second, Plaintiff presents no facts in support of this additional claim. In fact, Plaintiff even acknowledges that Defendant's response to Plaintiff's interrogatories, relied upon in Plaintiff's response to Defendant's Motion for Summary Judgment, states that Defendant does not retain any portion of the property insurance premium. (Docket No. 13, p. 3 n. 1).

The full text of O.C.G.A. § 7–3–14(3) states:

(3) Insurance premiums. A licensee may charge and collect from the borrower premiums actually paid or to be paid for insurance obtained for the borrower. A licensee may accept as security on any loan or advance made under this chapter any one or any combination of the following:

(A) Insurance on tangible property against substantial risks or loss;

(B) Reasonable insurance on the life and health of the principal party; or

(C) Reasonable insurance against accident of the principal party;

provided, however, that any such insurance shall be reasonably related to the type and value of the property insured and to the amount and term of the loan and shall be obtained from an insurance company authorized to conduct such business in the State of Georgia and at rates lawfully filed by such company with the Commissioner of Insurance and through a regular insurance agent licensed by the Commissioner of Insurance; provided, further, the amount of life, health, or accident insurance required as security for loans made under this chapter shall not exceed the amount of the loan, including charges, to be secured; and the premiums on such insurance required of the principal party obligated shall be limited to premiums reasonably based upon reliable actuarial experience and sound insurance practice; and the Commissioner is authorized and directed to promulgate rules and regulations to effectuate this provision in accordance with the spirit and intent thereof. It shall be the duty of the Commissioner from time to time under the foregoing direction, after public hearing in the manner provided in subsection (b) of Code Section 7–3–7, to determine and promulgate the rates and maximum premiums permissible to be charged for life, health, and accident insurance required as security for a loan made under this chapter and to make regulations incident thereto necessary to effectuate the same; such premiums, when thus established and as changed from time to time in the manner aforesaid, shall be the maximum effective and permissible charges under this para-

graph. Premiums paid or to be paid pursuant to the authority of this paragraph shall not constitute interest. The insurance company in turn may pay to the party writing the insurance policy sold in connection with the loan a fee or commission in an amount which is reasonable in relationship to the transaction and in no event in excess of the amount of fee or commission customarily paid within the industry where comparable insurance is sold in a transaction not involving credit, as determined by the Commissioner;

O.C.G.A. § 7–3–14. Plaintiff's reliance on the first part of the statute to support its proposed additional GILA claim appears hasty and inaccurate. Section 7–3–14(3) expressly provides that "[t]he insurance company in turn may pay to the party writing the insurance policy sold in connection with the loan a fee or commission." This payment is limited by the payment being "reasonable in relation to the transaction" and in conformity with industry standards, as provided by the Commissioner. Plaintiff fails to allege any factual allegations in the original Complaint or through the Second Motion to Amend that allow the Court to infer the essential elements of a GILA violation under this provision.

Plaintiff's citations to caselaw in support of this proposed additional claim provide no additional insight into her legal theory. First, Plaintiff asserts that *Buford v. American Finance Company*, 333 F.Supp. 1243, 1246 (N.D.Ga.1971) serves as the inspiration for an additional state law claim in this action. The Court is unclear as to how this case relates to the proposed GILA claim. In *Buford v. American Finance Company*, the court addressed pendent jurisdiction of proposed class action claims and dismissed these pending state law claims for state court disposition. *Id.* at 1248. Second, Plaintiff cites *Georgia Investment Company v. Norman*, 231 Ga. 821, 204 S.E.2d 740 (1974) to seemingly support its claim that any retention of the VSI premium by Defendant violates GILA. In *Georgia Investment Company v. Norman*, the Georgia Supreme Court found a GILA violation for the inclusion of a one dollar notary fee. The court held that "[n]otary fees are not authorized." *Id.* at 824, 204 S.E.2d 740. It seems Plaintiff wishes to extrapolate this determinative holding regarding a notary fee to an insurance premium fee. The plain text of GILA generally and O.C.G.A. §§ 7–3–14(3) and 7–3–15 do not support the result Plaintiff seeks.

In addition, Plaintiff fails to allege any new facts needed to support a GILA claim. Plaintiff's Second Motion to Amend was filed in conjunction with her response to Defendant's Motion for Summary Judgement. In Plaintiff's response, she agreed with all the material facts as presented by Defendant. Further, Plaintiff set forth Defendant's response to Plaintiff's interrogatories in support of her opposition to Defendant's Summary Judgment Motion. That same interrogatory response is footnoted in Plaintiff's Second Motion to Amend. Defendant states that it did not retain any portion of the VSI premium. Plaintiff makes no attempt to provide supplemental facts to support her GILA violation legal theory. Without allegations of the essential facts or presentation of a discernable legal theory, there is no basis for the Court to grant Plaintiff's Second Motion to Amend. This case presents a case where limitations on the liberal permissive amendment standard are warranted. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion to Amend to Substitute Party is **GRANTED**.

It is **FURTHER ORDERED** that Defendant's Motion for Summary Judgement is **GRANTED**.

It is **FURTHER ORDERED** that Plaintiff's Second Motion to Amend to Add Claim is **DENIED.**

A separate judgment in favor of Defendant World Finance of Georgia d/b/a Freeman Finance Company will be entered contemporaneously herein in accord with this Order.

The Clerk is directed to serve a copy of this Order on Plaintiff, Respondent, and their respective counsel.